SCHOTT, Judge.
Defendants, Dr. and Mrs. Santo J. LoCo-co, have appealed from a judgment in favor of plaintiff realtor White Properties, Inc. for a broker’s commission and in favor of plaintiffs-vendors Gilbert T. White and Robert W. Sullivan for liquidated damages based on plaintiffs’ breach of contract to purchase a home to be built by White and Sullivan.
In a written agreement dated July 8, 1976, the LoCocos agreed to purchase from White and Sullivan “Lot 5, Lake Whitney West, Sq. 3, Jefferson Parish, and 3500-4000 sq. ft. single family dwelling to be constructed as per plans to be attached to contract .... for the sum of $53,-500 for Lot and approximate cost for improvement to be $90,000 to $95,000 range. Total approximate Lot plus house cost $143,500.00 to $148,500.00.” The contract did not describe the house to be constructed or the period within which it was to be completed, but it required that the sale of the lot was to be passed on or before August 19, 1976.
On July 3, 1976, defendants had entered into an agreement to purchase from White and Sullivan a house and lot on Tolmas Street in Metairie for $85,500 and in connection therewith deposited $8550. Because of their dissatisfaction with this house defendants prevailed upon plaintiff Gilbert White to enter into the agreement sued on in place of the July 3 agreement.
After the July 8 agreement was signed White referred defendants to Harold Keller [1] who was White and Sullivan’s building supervisor to work out the plans for the house. Over the next few months numerous meetings took place between Keller and defendants until December when Keller informed White that defendants had decided not to build. In the meantime defendants took title to the lot for $53,500 in accordance with the agreement. The $8,550 deposited on the original agreement was used to pay the 4V2% real estate agent’s commission on the $53,500, and the balance was applied to the purchase price of the lot.
*DLVI This suit and the resulting judgment is for the real estate commission and a pro rated deposit on the $90,000 for which the house was supposed to be built. The central issue is whether a binding contract was entered into between defendants and White and Sullivan on July 8. The trial judge found that there was a meeting of minds between plaintiffs and defendants but defendants subsequently changed their minds. We have concluded that this finding is manifestly erroneous.
The only participants in the meeting of July 8 when the agreement was signed were White, the LoCocos and their agent A1 Magner, White’s version seems to preclude his recovery. He testified that he was asked by the LoCocos to void the Tolmas Street purchase agreement, substitute a purchase of a lot, and arrange for Mr. Keller to construct a 3500-4000 square foot house. White went on to say:
“In furtherance of that request we entered into a new agreement which was to, in effect, void the initial agreement, and the new agreement called for the purchase of Lot 5 in Lake Whitney and then, subsequently, 3500 to 4000 square feet of home to be constructed on that Lot, which plans were in the process of being worked out between Dr. LoCoco and Harold Keller.” (Emphasis added)
White described this as “a fairly long meeting” at which the LoCocos “expressed certain needs” in the house to be constructed and explained:
“. . . . the purpose of the meeting on July 8th was to ascertain what these needs were and to put them in touch with Mr. Keller to build plans and specs that would satisfy those needs.”
Finally White described the agreement reached at that meeting as requiring him “to take the [Tolmas Street] home and expand it to a larger version, which would take care of the needs they expressed at that time.”
From this testimony and that of the Lo-Cocos it is clear that all parties had only a vague idea of what the LoCoco wanted. It would be Keller’s job to transform these vague ideas into a definite plan. In any event there was no agreement made at that time and despite numerous meetings over several months no agreement was ever reached.
The principal contention made by plaintiffs and the one which apparently convinced the trial judge was that the agreement was definite. The Tolmas Street house, 2750 square feet, would be expanded to 4000 square feet and at $22 per square foot this would cost about $90,000. Had this been the testimony perhaps there would have been a contract. Taking the Tolmas Street and simply enlarging rooms to increase the square footage would have been relatively easy to translate into figures but that is not the sense of White’s or the LoCocos’ testimony. As White put it:
“After the second contract was signed Mr. Keller got with Dr. and Mrs. LoCoco for several meetings in which the ideas and needs they had expressed to me in the meeting on July 8th, were to be in effect, captured in the terms of plans.”
The problem was that the LoCocos’ “ideas and needs” were so vague and nebulous that they never could be captured. Thus, the contract sued on was invalid because it lacked a certain object as required by C.C. Arts. 1779 and 1886. The parties had agreed only that Keller would try to develop these “needs,” into a plan of construction for $90,000. As it turned out the LoCocos’ “needs” could not possibly be satisfied for less than $120,000.
Our conclusion is further supported by the testimony of plaintiff Robert W. Sullivan. He met defendants for the first time in August when they were meeting with Keller. He understood that the purpose was to increase the square footage of the Tolmas Street house. From the outset of the discussion among the LoCocos, Keller and the draftsmen he realized that the house being discussed was “foreign to [him] as it related to” the Tolmas Street house. He realized immediately “that they were going to build an all totally different type house than the 3724 Tolmas house.”
*DLVII From this testimony it appears that Sullivan was not aware that White’s agreement went beyond a simple expansion but, instead, included his commitment to let Keller try to “capture” the LoCocos’ ideas and needs.
In their arguments plaintiffs make much over Dr. LoCoco’s admission on cross examination that he changed his mind about the expanded version of the Tolmas Street house and wanted a more majestic house after meeting with Keller. But the problem stems from the uncertainty in the minds of White and LoCoco as to the meaning of “expanded version” in the first instance. This concept was so vague that it was not susceptible to a meeting of the minds of the parties.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of defendants Dr. and Mrs. Santo J. LoCoco and against plaintiffs, White Properties, Inc., Gilbert T. White and Robert W. Sullivan, dismissing their suit at their cost.
REVERSED AND RENDERED.
STOULIG and BOUTALL, JJ., dissent with written reasons.

. Keller died before the trial and before his testimony could be taken.