412 So.2d 122 (1982)
Vernon VILLARS, d/b/a Villars Construction and Remodeling Company
v.
Lawrence A. EDWARDS.
No. 14526.
Court of Appeal of Louisiana, First Circuit.
March 2, 1982.
Rehearing Denied April 13, 1982.
Writ Denied June 4, 1982.
*123 Leo J. Berggreen, Baton Rouge, for plaintiff-appellant Vernon Villars, d/b/a Villars Const. and Remodeling Co.
Felix R. Weill, Baton Rouge, for defendant-appellee Lawrence A. Edwards.
Before ELLIS, LOTTINGER and PONDER, JJ.
LOTTINGER, Judge.
This is a suit on an alleged oral building contract by plaintiff, Vernon Villars, d/b/a Villars Construction and Remodeling Company, contractor, against Lawrence A. Edwards, owner, for money still due and owing. Defendant reconvened, seeking damages caused by the faulty workmanship of Villars. The trial court rendered judgment in favor of plaintiff, Villars, on the main demand, and in favor of defendant, Edwards, on his reconventional demand. Both parties have appealed, and Edwards has answered the Villars' appeal, seeking an increase in the amount awarded in the reconventional demand.
The causes of action arose when Lawrence Edwards and his wife decided to build an addition to their house in Baton Rouge. The Edwardses, after having plans and specifications drawn up, began to solicit bids from contractors. Following an informal negotiation process, Villars was chosen for the job on or about November 21, 1978. Work commenced shortly thereafter. No written contract was ever signed by the parties. Villars received two thousand dollars from Edwards before commencing work. This money was deemed an "initial working fund." It was agreed that Villars would submit weekly invoices to Edwards. The amount of the invoices represented the costs of labor and materials expended, plus Villars' profit margin of twenty-five percent, of which ten percent was for general administration and fifteen percent was for superintendence and management. By the use of weekly invoices, the parties hoped to expedite work and allow Villars to enjoy his profit at an earlier time.
During December of 1978, Edwards began to have apprehensions about the cost of the project and the quality of the work being performed. Villars volunteered to reduce his profit margin to twenty percent to help keep costs down.
On January 19, 1979, Edwards informed Villars that he was terminated from the project, citing cost overruns and poor workmanship as the reasons for his dismissal. At the time of Villars' termination, Edwards had already paid $20,671.89 to Villars through weekly invoices. After his termination Villars submitted a final invoice on January 22, 1979, in the amount of $7,774.71. A portion of this amount represented the reinstatement by Villars of the five percent of profit which he had previously volunteered to forego. Villars filed suit for the amount of the final invoice.
Edwards reconvened, alleging that the parties had agreed that the cost of the project would not exceed $28,000, that completion of the job after Villars was fired resulted in an eventual total cost much higher than the maximum guaranteed price, and that faulty workmanship by Villars created costly repairs and other additional expenses. Edwards claimed total damages of $74,041.25, against which he set off the alleged maximum guaranteed price of $28,000; hence, the amount of the reconventional demand by Edwards was $46,041.25.
*124 Villars subsequently amended his petition to allege in the alternative that if no contract was ever perfected between the parties, he was entitled to recovery under quantum meruit theory.
Villars was awarded $1,028.81 on the main demand, and Edwards obtained judgment on the reconventional demand in the amount of $5,900.00. Costs were divided equally between the parties.

ISSUES ON APPEAL
Villars contends on appeal that the trial judge erred in awarding damages on the reconventional demand. He argues that the trial judge gave damages for an alleged breach of contract by Villars, when in fact no contract was consummated between the parties. Alternatively, Villars argues that the amount of damages given under the reconventional demand was not supported by the evidence.
Edwards asserts that the trial court erred in allowing Villars a profit on the final invoice, since the building contract had not been substantially completed. Edwards argues that a deduction of profit from the amount granted Villars on the main demand would result in his owing nothing to Villars. Edwards also asserts in answer to Villars' appeal that Villars should be held liable for all costs in excess of the alleged guaranteed maximum cost of $28,000; and alternatively, that even if no contract existed, evidence at trial showed greater damages in reconvention than were awarded by the trial judge.

I
The basis for recovery under the main and reconventional demands, as well as the items of damage which may be recovered, depends on an initial determination of whether a contract existed between the parties, and if so, what were the terms and conditions of same.
One of the requisites of a valid contract is an object which forms the matter of the agreement. La.C.C. art. 1779. The object is something which one or both of the parties oblige themselves to give, or to do, or not to do, La.C.C. art. 1883, and it must be determinate as to species, and at least ascertainable as to quantity. La.C.C. art. 1886. Article 1764 states in part that if that which is the essence of the contract is missing, there is no contract at all. The Louisiana courts have interpreted these and other codal provisions to mean that it is essential to the formation of a contract that the nature and extent of the obligations therein be certain. Jones v. Janes, 156 La. 715, 101 So. 116 (1924); White Properties, Inc. v. LoCoco, 377 So.2d 474 (La.App. 4th Cir. 1979), writ denied 380 So.2d 99 (La. 1980).
In the context of home building contracts, the obligation of the contractor is one to do, that is, to build an edifice. The obligation of the homeowner is to give money. Thus, under the above-cited articles of the Civil Code, the amount of money which the homeowner will pay for his new construction must be determinate or at least ascertainable in order that a valid construction contract be formed.
In the case sub judice, Edwards alleged and sought to prove that the parties orally agreed that the total cost of building the house addition would not exceed a guaranteed maximum of $28,000. Villars insisted that the parties agreed that the price would be determined on a "cost-plus" basis, that is, the costs of labor and materials, plus a profit margin. Both parties agreed that the method of payment would be by weekly "cost-plus" invoices. The only dispute is whether the parties agreed orally that the total cost would not exceed $28,000. A written contract between the parties was never signed. The trial judge held that there was no "meeting of the minds" between the parties as to price, and that no contract came into existence. The trial judge added that both parties were equally to blame for the confusion as to price.
Our review of the evidence demonstrates to us that the trial judge was eminently correct in holding that a building contract with a guaranteed maximum cost of $28,000 never came into existence. Both parties *125 were equally adamant on the witness stand as to the nature of preliminary negotiations which preceded construction. Edwards and his wife insisted that Villars promised to complete the entire project for $28,000. Villars testified that he had given $28,000 as a general or "ballpark" estimate but that he never gave an absolutely firm maximum price because he was unable to do so, due to alterations in the plans and specifications which both parties agreed would be necessary. The self-serving testimony of the parties was the only evidence of the agreement in the absence of a written contract. Since no agreement was made as to price, neither party can recover for the breach.

II
The fact that no contract was consummated does not necessarily mean that the parties are left without legal redress. The civil law of Louisiana recognizes the equitable doctrine of quantum meruit, based on the concept that one who benefits by the labor and materials of another should not be unjustly enriched thereby. Under those circumstances, the law implies a promise to pay a reasonable amount for the labor and materials furnished, even absent a specific contract therefor. The equitable doctrine of quantum meruit is based on the theory of quasi-contract, La.C.C. Arts. 2292-2294, and on the Christian principle of fairness proclaimed in La.C.C. Art. 1965.[1]
Hence, although no oral contract was consummated between the parties because there was no "meeting of the minds" as to price, we hold that Villars is entitled to recover under the quasi-contractual theory of quantum meruit, see Kleinschmidt, Brassette and Associates, Inc. v. Ayres, 368 So.2d 1153 (La.App. 3rd Cir. 1979). Ironically, the claim of Villars on the main demand represents what would be a typical quantum meruit recovery, i.e., to be paid for what work was completed.
Under quantum meruit, Villars is entitled to recover the amount of materials and labor actually expended, plus a fair profit. Skains v. White, 391 So.2d 1327 (La.App. 2nd Cir. 1980); McMorris v. Pepperdene, 292 So.2d 892 (La.App. 1st Cir. 1974), writ denied 294 So.2d 840 (La.1974). Edwards argues that since he personally paid some materialmen on the final invoice, that these amounts should be deducted before figuring the profit margin. This argument is seductive, but overlooks the fact that Villars had to go out and buy these materials and incur expenses in seeing them delivered and installed. Edwards should not be able to deprive his contractor of a profit simply because he has paid off materialmen directly, without the contractor's knowledge.
The trial judge assessed Villars a twenty percent profit margin; however, the $2000.00 "working fund" initial capital was *126 set off against the invoice amount prior to assessing the amount of profit. This we feel is erroneous; the amount of profit due under the final invoice should be based solely on the amount of labor and materials expended. Credit for the initial payment should be assessed only after determining the total amount due Villars. Similarly, credit for the amount paid directly by Edwards to various materialmen should be assessed after determining the total amount due under the final invoice, including profit and overhead. We find that the amount due under the main demand is as follows:

$ 7,430.00 labor and materials on final invoice
+ 1,486.00 20 percent profit margin
__________
 8,916.00
 -2,000.00 credit for "working fund" initial payment
__________
 6,916.00
 -5,487.81 credit for direct payments to materialmen
__________
$ 1,428.19 amount due Villars under main demand

III
Villars argues that the trial court erred in granting judgment to Edwards on the reconventional demand. His position is that the damages given Edwards were for his alleged breach of contract, but that such an award was unfounded since the trial court ruled that no contract ever came into existence. Villars contends that the award on the reconventional demand has no basis in law, and must be overturned.
Edwards urges us to apply La.C.C. Art. 2769.[2] Generally, this article has been interpreted to mean that in every construction contract the contractor must perform the work in a good, workmanlike manner, free from defects attributable to faulty materials or poor workmanship, Calcon, Incorporated v. Young Companies, Inc., 322 So.2d 883 (La.App. 1st Cir. 1975). However, from the language of the article as well as from its position within the Civil Code, it is clear that a valid contract is a prerequisite to the article's applicability. We have already concluded that no contract existed between Edwards and Villars, thus Article 2769 is not the vehicle of Villars' liability in reconvention.
Because of the existence of a quasi-contract, Villars was given judgment on the main demand. We refer again to Article 2293 of the Civil Code,[3] which states in part that a quasi-contract may result in reciprocal obligations between the parties. Applying this article to the case at bar, we hold that Villars owed an obligation to perform his services in a workmanlike manner despite the absence of a valid contract, just as Edwards owed a reciprocal obligation to pay under quantum meruit for the work which was completed. To hold otherwise would be to totally ignore equity, which is the philosophical basis for the articles on quasi-contract.
Additionally, we note that Civil Code Article 1901 states that agreements legally entered into have the effect of law on those who have formed them. This article means that the contract is the law between contracting parties. However, where there is no valid contract, no express law exists to settle a dispute between parties such as those before this court. As a result, we are guided by Civil Code Article 21, which states that in civil matters where there is no express law, the judge is bound to proceed and decide according to equity. Article 21 further states that to decide equitably is to decide on the basis of natural law and reason, or on the basis of received usages. It is our opinion that an appeal to reason leads us to only one equitable result: that Villars, having been paid under quantum meruit for work performed, must be held liable for whatever damages are attributable to his poor workmanship.

IV
There is no question in our minds that much of the work on the addition performed by Villars was not done in a workmanlike manner. Leonard Bales testified on behalf of Edwards. Bales was a representative *127 of the contracting firm which completed the house addition after Villars was terminated. Bales testified that twelve areas in the addition needed correcting prior to his finishing the addition. These repairs cost a total of $2300.00, and were performed by Bales & Price, the contractors who finished the addition. During the course of Bales' work he performed an additional $250.00 worth of repair work on the chimney fascia. This amount was not included in the $2300.00 originally expended by Edwards for repairing poor workmanship. Thus, Edwards incurred out-of-pocket expenses of $2550.00 as a result of poor workmanship by Villars.
As a result of his termination, Villars left the worksite without cleaning it. The clutter which was left behind had to be cleaned up by Edwards and his wife. The clutter left behind was described during trial as a "horrible mess" by Bales. Our review of photographs of the worksite convinces us that Mr. and Mrs. Edwards faced an extremely unenviable task in clearing the worksite of debris. Bales testified that it would cost about $1500.00 in labor charges to have the worksite cleaned. Villars' expert, Raul Gonzales, estimated $600.00 as costs for cleaning up. Edwards testified that the cleanup required several days of back-breaking labor. The trial court awarded $600.00 for cost of ridding the worksite of trash and debris. We accept the ruling of the trial court as to this element of damages.
The primary dispute as to damages does not concern the above-mentioned elements, but deals with a $3000.00 award which the trial judge gave for "general damages for work not done in a workmanlike manner and not reasonably repairable." Villars argues that this is an award for mental anguish, inasmuch as Edwards did not actually expend any of this amount. Villars argues further that an award for mental anguish is not proper in a contract case. However, we are not deciding this case on the basis of a contract, since none existed. The case which is decided herein is determined on the basis of equity, and rules as to contractual damages do not apply. Furthermore, the $3000.00 award was not for mental anguish. Leonard Bales testifies as to a number of defects in Villars' work which were not repaired. The reason these defects were not repaired is that Edwards did not have on hand the large amounts of money which would be necessary to effect repairs.
Bales testified that one bedroom wall was some two-and-one-half inches out of plumb. He also stated that there was a bulge in a wall some eighteen by twelve inches, and that the bulge protruded about two inches. The costs of repairing the walls was approximately $3,000.00, according to Bales. Another problem not repaired involved the center beam in the "great room" or den area of the addition. The beam was not centered correctly, and Bales estimated that it would cost $250.00 to properly align the beam. Bales further testified that the brickwork on the addition was "totally unacceptable" in that it was laid out of plumb and out of line, and that the joints had been roughly hacked instead of smoothly cut. Bales estimated that to repair the brick work would cost another $3000.00. Thus, the evidence shows that the addition still suffers serious defects. These defects are not merely an affront to aesthetics, inasmuch as they will adversely affect whatever resale value the house will have, should the Edwardses decide to sell. Edwards cannot be denied recovery simply because he did not have enough funds available to repair the defects which were caused by the poor workmanship of Villars. We hold that the existence of defects not reasonably repairable was supported by a preponderance of the evidence, and that an award of damages for same is proper.
Edwards argues that the award of $3000.00 damages for defects not reasonably repairable was inadequate and not in accordance with the evidence adduced. Edwards argues that the award given was much less than what Bales estimated would be the cost to repair these remaining defects. However, under Civil Code Article 1934(3), the assessment of damages in cases involving quasi-contracts is left to the trial *128 judge, who is afforded much discretion in this area. Although Bales testified that $6250.00 would be required to repair the remaining defects, we are of the opinion that the trial judge's award of $3000.00 was well within the "much discretion" afforded under La.C.C. 1934(3).
Thus, we affirm the judgment of the trial court on the reconventional demand, except for amending the amount for actual expenses to $2550.00, which includes $250.00 of fascia work actually performed but not included in the original award of $2300.00 for out-of-pocket expenses. The damages on the reconventional demand are as follows:

 $ 2550.00 repair work actually done
 + 600.00 estimate for cleanup work
 _________
 3150.00
 +3000.00 award of general damages for work improperly
 done and not reasonably repairable
 _________
 $ 6150.00 Final award due on reconventional demand

Since we have determined that Edwards owes Villars $1428.19 on the main demand, and that Villars owes Edwards $6150.00 on the reconventional demand, we shall thereby effect a "judicial compensation" in order to avoid the necessity of reciprocal payments between the parties. Cf. La.C.C. art. 2207 et seq., Tolbird v. Cooper, 243 La. 306, 143 So.2d 80 (1962). The result of this judicial compensation is that judgment issue in favor of Edwards for $4721.81.

DECREE
Therefore, for the above and foregoing reasons, judgment is rendered herein amending and affirming the judgments of the trial court, and awarding to Lawrence H. Edwards the sum of Four Thousand Seven Hundred Twenty-one and Eighty-one/100ths ($4721.81) Dollars. Costs of this appeal are to be divided equally between the parties.
AMENDED and AFFIRMED.
NOTES
[1] Articles 2292-2294 reads:

"Art. 2292. Certain obligations are contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place.
"Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor.
"The first are such engagements as result from tutorship, curatorship, neighborhood, common property, the acquisition of an inheritance, and other cases of a like nature.
"The obligations, which arise from a fact, personal to him who is bound, or relative to him, result either from quasi contracts, or from offenses and quasi-offenses.
"Art. 2293. Quasi contracts are the lawful and purely voluntary act of a man, from which there results any obligation whatever to a third person, and sometimes a reciprocal obligation between the parties.
"Art. 2294. All acts, from which there results an obligation without any agreement, in the manner expressed in the preceding article, form quasi contracts. But there are two principal kinds which give rise to them, to wit: The transaction of another's business, and the payment of a thing not due."
Article 1965 reads:
"Art. 1965. The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."
[2] Civil Code Article 2769 reads:

"If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract."
[3] See footnote 1, supra.