906 So.2d 536 (2005)
RICKY'S DIESEL SERVICE, INC.
v.
Randall PINELL and Gulfbound, L.L.C.
No. 2004 CA 0202.
Court of Appeal of Louisiana, First Circuit.
February 11, 2005.
*537 L. Stephen Cox, Baton Rouge, Counsel for Plaintiff/Appellant Ricky's Diesel Service, Inc.
Marvin Gros, Tonya B. Clark, Metairie, Counsel for Defendants/Appellees Randall Pinell and Gulfbound, L.L.C.
Before: GUIDRY, McDONALD, and McCLENDON, JJ.
GUIDRY, J.
A diesel engine repair company contests a judgment of the trial court awarding only a portion of the damages requested in a suit brought against a customer for breach of contract. Based on our review of the record before us, we amend the judgment rendered herein.

FACTS AND PROCEDURAL HISTORY
In February 2001, Randall Pinell approached Ricky Price, as the owner and operations manager of Ricky's Diesel Service, Inc. (hereinafter referred to collectively as "Price") about acquiring a KT 1150 450 horsepower Cummins engine. Price advised Pinell that he did not think he could build an engine to that low of a horsepower specification, but that he had recently built a 525 horsepower engine for another customer. After consulting with a mechanic employed by Price, who specialized in working on Cummins engines, Pinell negotiated with Price to acquire a KT 1150 engine to rebuild. Price later acquired a 680 horsepower KT 1150 Cummins engine and quoted Pinell the price of $11,000 for its acquisition. On being notified of the acquisition, Pinell had his wife Lucy Pinell pay for the engine; however, Lucy Pinell issued payment for $14,000 rather than $11,000, which was accepted by Price.
Thereafter, Pinell again inquired into whether Price would be able to convert the engine to 525 horsepower, to which Price assented, quoting a price of around $36,000. Pinell rejected that quote as "too high" and more than what he was willing to pay to obtain a 525 horsepower Cummins engine. Later, Pinell again approached Price about converting the 680 horsepower engine to 525 horsepower, offering to pay $25,000 for the work. Pursuant to this offer, Price commenced work on converting the 680 horsepower engine to 525 horsepower, with the understanding that he would be paid $25,000 for the work performed in addition to the $14,000 already paid by Pinell. On presenting his bill for services rendered, however, Price learned that Pinell's offer of $25,000 was inclusive of the $14,000 previously paid. After attempts to resolve the price dispute proved unsuccessful, Price filed a petition for damages against Randall Pinell and Gulfbound L.L.C.[1] (hereinafter referred to *538 collectively as "Pinell") to recover the sum of $27,806.87 as an amount owed on open account, or in the alternative, as the amount owed for breach of contract.
A trial on the merits was held, following which the trial judge found both parties to be credible, but there existed a misunderstanding regarding the total price for the services rendered. Nevertheless, the trial judge determined that based on the testimony and the documentary evidence presented, the proper amount to award under the contract was $11,300, the sum conceded by Pinell as due and owing. It is from that judgment that Price now appeals.

ASSIGNMENTS OF ERROR
By this appeal, Price argues that:
1. In light of his factual determination that neither party understood the terms and cause of the contract as intended by the other, the trial judge erred in finding and enforcing a contract between the parties.
2. Trial judge erred in failing to award recovery to Ricky's Diesel on either a quantum meruit or Unjust Enrichment basis. Ricky's Diesel should be compensated for its loss either on a quantum meruit basis, or to the extent that Randall [P]inell and Gulfbound, L.L.C. have been unjustly enriched.

DISCUSSION
In his first assignment of error, Price asserts that the trial judge erred in finding that a valid contract existed in light of the fact that there was "no meeting of the minds" as to price. We agree.
A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. An obligation cannot exist without a lawful cause. La. C.C. art. 1966. Cause is the reason why a party obligates himself. La. C.C. art. 1967. Where there is no "meeting of the minds" between the parties, there is no consent, thus no enforceable contract. La. C.C. art. 1927; Howell v. Rhoades, 547 So.2d 1087, 1089 (La.App. 1st Cir.1989). Consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been know to the other party. La. C.C. art. 1949.
In the matter before us, it is evident that although the parties had a history of dealings, and it was desired by each that Price perform the engine work, there was no consent reached as to price. At trial, Price testified that when he accepted Pinell's offer to perform the conversion work on the 680 horsepower engine for $25,000,[2] he understood Pinell's offer to be exclusive of the $14,000 already paid, despite earlier assertions by Pinell that he was not willing to pay the estimates of $35,000 to $38,000 Price had previously quoted for the work. Price admitted that he did not confirm with Pinell that the $25,000 was exclusive of the amount previously paid, because, as he explained:
I understood that be  to be  to rebuild that engine, because he  he purchased the engine already. He owned the engine. The core, you know, he's been having it for six months. So I *539 understood that to be to rebuilding of the engine.
* * *
So, besides we discussed at length about the price of the engine what it would be. We  we mentioned it two or three times of what the price of the engine would be. Well over 35,000. And that's why I thought that what he was talking about was the rebuilding of the engine.
To the contrary, Pinell contended that his offer to pay $25,000 was inclusive of the $14,000 already paid and that he was certain that Price understood this based on earlier adamant refusals to pay over $30,000 for the rebuilt engine. In response to the trial judge's question "did you ever ask him if that included the 14 you had already paid? Or did you just assume that it did?" Pinell responded: "Well I assumed it did. That was my price. I mean I  he knew. We had been arguing about it for probably five months. I wasn't paying over $30,000. I was not gonna do it. If that was the case, I was gonna buy a different engine."
Thus, based on the record before us, we find that the trial judge erred in finding that a valid contract existed in accordance with the terms as expressed by Pinell, despite finding the parties to be "honest individuals and this may have been just a misunderstanding." There was clearly no meeting of the minds, and thus, no contract.
However, the fact that no contract was formed does not necessarily mean that the parties are left without legal redress. The civil law of Louisiana recognizes the equitable doctrine of quantum meruit, based on the concept that one who benefits by the labor and materials of another should not be unjustly enriched thereby. Under those circumstances, the law implies a promise to pay a reasonable amount for the labor and materials furnished, even absent a specific contract therefor. La. C.C. art. 2298; Villars v. Edwards, 412 So.2d 122, 125 (La.App. 1st Cir.), writ denied, 415 So.2d 945 (La.1982).
The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less. The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered. La. C.C. art. 2298.
At trial, both sides presented evidence regarding the value of the converted engine. The evidence introduced by Price, consisting of invoices and receipts for parts and labor expended in converting the 680 horsepower engine to a 525 horsepower engine, clearly support his claim. However, both Pinell and an expert witness offered by Price testified regarding the general price of such an engine should Pinell have chosen to have purchased one, specification ready, on the open market as advertised in a well-known industry magazine entitled "Boats and Harbors." The evidence in conjunction with their testimony basically proved that Pinell could have purchased a KT1150 525 horsepower Cummins engine outright on the open market for a price of anywhere from $25,000 to $35,500. The expert witness presented by Price explained that the large price disparity could be attributed to the type of vessel the engine was removed from, how many times the engine had been rebuilt, and the type of parts  original manufactured or aftermarket  used to rebuild it. Pinell testified, however, that he instructed and encouraged Price to use aftermarket parts in order to keep the price of the engine at or below $25,000. The Price mechanic who performed the work also testified that *540 aftermarket parts were used primarily and original manufactured parts were only used when aftermarket parts were unavailable. Considering this evidence, we find an award of $30,000, less the $14,000 deposit paid by Pinell, is appropriate under La. C.C. art. 2298.
Finally, we will briefly address Pinell's argument that this court should not consider Price's request for recovery under the doctrine of quantum meruit. Price is entitled to compensation under the doctrine of quantum meruit, which is to say, "a person can, by his action and acceptance of benefits of another's labor, obligate himself to pay reasonable value of the other's labor." Bar-Tow, Inc. v. Roy's Transport, Inc., 616 So.2d 203, 207 (La.App. 5th Cir.1993); see also Villars, 412 So.2d at 125. Moreover, this court can make an award of quantum meruit, since we find that Price is entitled to the same, in spite of the fact that he never specifically prayed for such relief. Kibbe v. Lege, 604 So.2d 1366, 1371 (La.App. 3rd Cir.), writs denied, 606 So.2d 540, 541 (La.1992). Price's failure to plead quantum meruit cannot bar recovery because Pinell was given fair notice by the factual pleadings submitted by Price. Thus, Price was not required to plead quantum meruit under the circumstances of the instant case in order to be allowed recovery under that theory or doctrine. Southern Mosaic Tile, Inc. v. Alessi, 411 So.2d 601, 604 (La.App. 1st Cir.1982); Terral v. Bearden, 338 So.2d 141, 144 (La.App. 2nd Cir.1976); La. C.C.P. arts. 862 and 2164.

CONCLUSION
For the foregoing reasons, we find that based on the parties' failure to have a "meeting of the minds" relative to the price for the services rendered in converting the 680 horsepower engine to a 525 horsepower engine, a valid contract was not formed. However, because Pinell was enriched without cause at the expense of Price, we amend the judgment of the trial court to award Price $30,000, less the $14,000 paid by Pinell, plus legal interest from the date of judgment, pursuant to La. C.C. art. 2298. Costs of this appeal are taxed equally to the parties.
JUDGMENT AMENDED.
NOTES
[1] Gulfbound L.L.C. is a corporation jointly owned and managed by Randall and Lucy Pinell for building boats.
[2] Price testified that he did not accept the offer outright, but told Pinell that the work would probably cost a "little bit more," around two or three thousand, because of the large conversion in horsepower, to which Pinell allegedly responded "well, if that's all it's going to be, go ahead and get started."