ROBERT SCHIFF          *        NO. 2021-CA-0267

VERSUS               *

                                COURT OF APPEAL

LAWRENCE G. PUGH, III,     *
FREDERICK T. HAAS, III,         FOURTH CIRCUIT
ALEXANDER L. BURNS, AND    *
PUGH, ACCARDO, HAAS,          STATE OF LOUISIANA
RADECKER & CAREY, L.L.C.   * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2014-03864, DIVISION "A"
Honorable Ellen M Hazeur, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *
**ON REMAND FOR THE SUPREME COURT**

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Pro
Tempore Judge Madeline Jasmine)
JENKINS, J., CONCURS IN THE RESULT

R. Joshua Koch, Jr.
KOCH AND SCHMIDT, LLC
650 Poydras Street
Suite 2660
New Orleans, LA 70130


        COUNSEL FOR PLAINTIFF/APPELLANT


James H. Gibson
Stacy N. Kennedy
GIBSON LAW PARTNERS, L.L.C.
2448 Johnson Street
P.O. Box 70505
Lafayette, LA 70505


        COUNSEL FOR DEFENDANT/APPELLEE

                    **REVERSED AND REMANDED**
                        **JULY 20, 2022**

This legal malpractice case is before us on remand from the Louisiana Supreme Court. *Schiff v. Pugh*, 22-00210 (La. 4/12/22), 335 So.3d 830. In this court's previous opinion, the majority dismissed the appeal as untimely. *Schiff v. Pugh*, 21-0267 (La. App. 4 Cir. 12/8/21), ___ So.3d ___, 2021 WL 5829954 ("*Schiff* I"). The Supreme Court vacated this court's decision, reinstated the appeal, and remanded to this court for consideration of the appeal on the merits.

The plaintiff, Robert Schiff, appeals the trial court's judgment granting the motion for summary judgment filed by defendants— Frederick T. Haas, III, and the law firm of Pugh, Accardo, Haas, Radecker & Carey, LLC (collectively, "Defendants")—and dismissing Mr. Schiff's claims against them. For the reasons that follow, we reverse and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

This legal malpractice suit arises from Defendants' representation of Mr. Schiff—the defendant in a contract suit filed by Lidia Pollard ("the *Pollard* suit"). Ms. Pollard and Mr. Schiff entered into a contract to purchase, renovate, and sell

1

New Orleans area properties damaged by Hurricane Katrina. Pursuant to their contract, Mr. Schiff was to provide the capital for the project and to handle the purchase and sale of the properties, while Ms. Pollard oversaw the renovation of the properties. After their business relationship soured, Ms. Pollard sued Mr. Schiff, seeking recovery of expenses incurred and profits owed. Following a bench trial, the trial court in the *Pollard* suit issued a written judgment and incorporated reasons for judgment, finding that Mr. Schiff breached the contract with Ms. Pollard in bad faith and awarding her $685,176.52. The award to Ms. Pollard included expenses she incurred during renovations and $373,312.80 in profits owed from the sales of renovated properties. The trial court also ordered Mr. Schiff to pay judicial interest on the entire award commencing on September 1, 2009.[1] On appeal, this court amended the underlying judgment to $684,824.73 but otherwise affirmed the trial court's judgment. *Pollard v. Schiff*, 13-1682 (La. App. 4 Cir. 2/4/15), 161 So.3d 48.

In 2014, Mr. Schiff filed this malpractice suit against Defendants, claiming that their negligent representation at trial in the *Pollard* suit caused the unfavorable judgment against him. As the malpractice suit proceeded, Mr. Schiff, through his retained expert witness, Dane Ciolino, alleged particular acts or omissions by Defendants that constituted breaches of the standard of care committed by Defendants. According to Mr. Ciolino's report and deposition testimony,

---

[1] As of the date the *Pollard* trial court issued its August 2, 2013 written judgment and incorporated reasons for judgment, accumulated interest, commencing on September 1, 2009, totaled $109,116.97.

2

Defendants breached the standard of care by: (1) failing to provide competent representation on accounting issues;[2] (2) failing to introduce evidence of a $15,000.00 promissory note issued by Ms. Pollard in favor of Mr. Schiff; (3) failing to raise the issue that Ms. Pollard was not a licensed contractor; (4) failing to object to admission of evidence of offers of compromise; (5) failing to object to a proposed judgment submitted to the trial court by Ms. Pollard's attorneys; (6) failing to submit a verifying affidavit with Mr. Schiff's motion for new trial; and (7) failing to confirm in writing an agreement with Ms. Pollard to pay Ms. Pollard $10,000.00 in exchange for a continuance of the trial.

Defendants moved for summary judgment, arguing Mr. Schiff could not establish that any of the alleged breaches identified by his expert witness contributed to the judgment against him in the *Pollard* suit. Defendants maintained that Mr. Schiff required expert testimony to prove causation, but his expert witness declined to offer any opinions on causation, warranting summary judgment dismissal of Mr. Schiff's claims.[3] Moreover, Defendants argued, the outcome in the *Pollard* suit would have been the same even if Defendants had not committed the alleged breaches. In support, Defendants relied on the report and deposition of their own expert witness, Wayne Lee, who opined that the trial court

---

[2] One of the primary disputes in the *Pollard* suit was the amount of profits realized from the sale of the renovated properties. Thus, accounting evidence and evidence of incurred expenses by both parties were crucial at trial.

[3] In his deposition testimony, Mr. Ciolino explained that he would not offer expert opinions on causation, because questions on causation and damages should be left to the jury and his opinions would be speculative.

in the *Pollard* suit would have entered the unfavorable judgment against Mr. Schiff regardless of Defendants' alleged malpractice.[4]

In opposition, Mr. Schiff argued that he did not need expert testimony to establish causation. Mr. Schiff contended that he needed only to establish a causal connection—which could be established by lay testimony—between the alleged negligence and the unfavorable outcome of the litigation. Mr. Schiff further addressed each instance of negligence identified by Mr. Ciolino's report and offered his theories as to how each alleged breach caused the adverse judgment against him in the *Pollard* suit. In support of each of these theories, Mr. Schiff cited evidence purportedly attached to his opposition memorandum.[5]

At the hearing, the trial court granted Defendants' summary judgment motion. The trial court disagreed with Defendants' argument that Mr. Schiff needed expert testimony to establish causation. Still, the trial court found Mr. Schiff's opposition memorandum and attachments inadequate to preclude summary judgment. In its written reasons for judgment, the trial court reviewed each breach alleged against Defendants and concluded that either Mr. Schiff's causal theories did not adequately demonstrate that the alleged breach contributed to the judgment against him or the evidence attached to Mr. Schiff's opposition memorandum did not create a genuine issue of material fact regarding causation, citing, in some instances, the omission of supporting evidence from Mr. Schiff's opposition memorandum attachments.

_____

[4] The trial court struck Mr. Lee's expert report and deposition on the ground that Mr. Lee's causation opinions are speculative.

[5] The record reflects that some of the deposition transcript excerpts Mr. Schiff cited in support of his opposition memorandum were unintentionally omitted. After the hearing on the defendants' summary judgment motion, Mr. Schiff filed a motion for leave to supplement the record with the inadvertently omitted deposition transcript excerpts, but the trial court denied the motion.

After the trial court granted Defendants' motion, Mr. Schiff filed a motion for new trial, which the trial court denied. This appeal followed.

### *Summary Judgment Principles and Standard of Review*

The summary judgment procedure is used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. La. C.C.P. art. 966(A)*; see also Balthazar v. Hensley R. Lee Contracting, Inc.*, 16-0920, p. 9 (La. App. 4 Cir. 3/14/17), 214 So.3d 1032, 1040 (observing that "summary judgment is a procedural vehicle for dismissing issues of law and/or fact that are not in dispute"). "A defendant can successfully move for summary judgment if he or she can demonstrate beyond peradventure the nonexistence of a fact essential to the plaintiff's cause of action." Frank L. Maraist, 1 LA. CIV. L. TREATISE, CIVIL PROCEDURE § 6:8 (2d ed. 2018). The summary judgment procedure is "designed to secure the just, speedy, and inexpensive determination of every action," and the summary judgment procedure is favored. La. C.C.P. art. 966(A)(2).

Appellate courts review the grant or denial of a motion for summary judgment *de novo*, employing the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Garces-Rodriguez v. GEICO Indem. Co.*, 16-196, p. 3 (La. App. 5 Cir. 12/21/16), 209 So.3d 389, 391; *Sislo v. New Orleans Ctr. for Creative Arts*, 16-0178, p. 4 (La. App. 4 Cir. 8/17/16), 198 So.3d 1202, 1205 (citing *Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83). The standard for granting a motion for summary judgment is set forth in La. C.C.P. art. 966(A)(3), which provides:

> After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.

5

A shifting burden of proof is set forth in La. C.C.P. art. 966(D)(1), which provides:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

A genuine issue is one as to which reasonable persons could disagree; "if . . . reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A fact is material when its existence or nonexistence may be essential to the plaintiffs [*sic*] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Chapital v. Harry Kelleher & Co., Inc.*, 13-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81. Whether a fact is material is a determination that must be made based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270.

### *Legal Malpractice Principles*

To establish a claim for legal malpractice, a plaintiff must prove three elements: "(1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence." *Ewing v.*

*Westport Ins. Corp.,* 20-00339, p. 8 (La. 11/19/20), 315 So.3d 175, 180–81, *reh'g denied*, 20-00339 (La. 2/9/21), 310 So.3d 175. In *Jenkins v. St. Paul Fire & Marine Ins. Co.*, 422 So.2d 1109, 1110 (La. 1982), the Supreme Court disavowed the "case within a case" requirement in legal malpractice cases. "Under that approach, a plaintiff in legal malpractice litigation [was required to] prove not only that the attorney was negligent in handling the client's claim or litigation, but also that the claim or litigation would have been successful but for the attorney's negligence." *Id.*

In *MB Indus., LLC v. CNA Ins. Co.*, 11-0303, p. 20 (La. 10/25/11), 74 So.3d 1173, 1187, the Supreme Court confirmed that *Jenkins* had eliminated the "case within a case" requirement but it also made clear that "causation is an essential element of any tort claim" and that "[a]t the very least, [plaintiff] must establish some causal connection between the alleged negligence and the eventual unfavorable outcome of the litigation." *Id.* (internal quotations omitted). And, though expert witness testimony is often necessary in legal malpractice cases to establish the standard of care and to show that the attorney's actions fell below the standard of care, there is no requirement for expert witness testimony to prove an attorney's breach caused the plaintiff's loss. *Id.*, 11-0303, pp. 15, 20, 74 So.3d at 1184, 1187.

### *Discussion*

Mr. Schiff assigns error to the trial court's grant of summary judgment in Defendants' favor.[6] Mr. Schiff argues that the trial court employed the incorrect legal standard and that the trial court erred in its analysis of the facts of the case.

---

[6] Mr. Schiff also assigns error to the trial court's denial of his motion for new trial. Our decision concerning his first assignment of error, however, moots this assignment of error.

We disagree with Mr. Schiff's argument regarding the legal standard employed by the trial court. In its written reasons for judgment, the trial court accurately stated the law applicable to Mr. Schiff's legal malpractice claims, concluding that Mr. Schiff did not need expert testimony to establish causation and finding that Mr. Schiff had offered multiple theories establishing a causal connection between Defendants' alleged negligence and the adverse outcome of the *Pollard* suit.

Yet, in its analysis of the facts of the case, the trial court found that either Mr. Schiff's arguments in opposition to summary judgment failed to demonstrate the existence of a factual dispute precluding summary judgment or that Mr. Schiff's arguments were not supported with competent evidence. The trial court observed that the deposition transcript pages attached to his opposition memorandum were not the same as those pages cited within his memorandum.

As to all but one of the negligent acts or omissions alleged against Defendants, we agree with the trial court's finding that Mr. Schiff failed to establish the alleged negligence caused his losses. But, we find merit in Mr. Schiff's contention that genuine issues of material fact remain as to whether Defendants' failure to raise the issue of Ms. Pollard's status as an unlicensed contractor potentially caused an increase in the *Pollard* trial court's award against him.

The State Licensing Law set forth in La. R.S. 37:2160 makes it "unlawful for any person to engage or continue in this state in the business of contracting, or to act as a contractor unless he holds an active license as a contractor under the provisions of the Louisiana State Licensing Laws." *Id*. Any contract made in violation of the State Licensing Law is null and void. *Quaternary Resource*

*Investigations, LLC v. Phillips*, 18-1543, p. 16 (La. App. 1 Cir. 11/19/20), 316 So.3d 448, 459 (citing *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, L.L.C.*, No. 06-593, 2007 WL 1191896, at *3 (E.D. La. Apr. 20, 2007) (*unpub.*)). "[U]sing the theory of unjust enrichment, the Supreme Court limits the recovery of unlicensed contractors to the actual costs of their materials, services, and labor in the absence of a contract or in the case of a null contract, with no allowance for profit or overhead." *Quaternary Resource Investigations, LLC*, 18-1543 at p. 22, 316 So.3d at 463 (citing *Boxwell v. Dep't of Highways*, 14 So.3d 627, 631 (La. 1943); *Villars v. Edwards*, 412 So.2d 122, 125 (La. App. 1st Cir. 1982)). Moreover, where recovery is based on the unjustified enrichment theory, interest will be allowed on the amount recovered only from the date of final judgment. *Hagberg v. John Bailey Contractor*, 435 So.2d 580, 587 (La. App. 3d Cir. 1983); *see also Sam Staub Enterprises, Inc. v. Chapital*, 11-1050, p. 13 (La. App. 4 Cir. 3/14/12), 88 So.3d 690, 698.

Thus, if Ms. Pollard was not a licensed contractor at the time she was overseeing renovations of the properties Mr. Schiff purchased, Mr. Schiff may have had a valid defense at trial to payment of $373,312.80 in profits and pre-judgment interest in excess of $100,000.00. As the trial court correctly observed in its reasons for judgment, Mr. Schiff cited deposition testimony and other exhibits which allegedly supported his argument that Defendants knew Ms. Pollard was not a licensed contractor and failed to raise the issue at trial, but he failed to attach the corresponding pages of the deposition transcript. Nevertheless, the exhibits that were attached to his memorandum include excerpts from the deposition of Alexander Burns, an associate at the law firm, whose testimony supports Mr. Schiff's argument.

Mr. Burns testified that he was instructed to research Ms. Pollard's licensure and the viability of a potential defense based on her unlicensed contracting work. He found unreliable results as to whether Ms. Pollard was licensed on the website of the State Board of Contractors, suggesting that Ms. Pollard was not licensed. Mr. Burns also found legal authority suggesting that Ms. Pollard's recovery of profits would be limited if she were unlicensed. Mr. Burns, however, did not recall discussing the issue with Mr. Schiff; and the issue was not raised in the *Pollard* suit. Likewise, Mr. Ciolino, Mr. Schiff's expert witness, testified during his deposition that it was his understanding that Ms. Pollard was not a licensed contractor during the existence of the contract with Mr. Schiff.

We agree with Mr. Schiff's argument that the foregoing evidence demonstrates the existence of genuine issues of material fact concerning the causal connection between Defendants' alleged negligence—failure to fully investigate and raise the issue of Ms. Pollard's licensure—and Mr. Schiff's losses—the award to Ms. Pollard of profits and pre-judgment interest, which together comprise the majority of the judgment against Mr. Schiff.

In supplemental briefing filed upon remand of this case from the Supreme Court, Defendants contend that Mr. Schiff's theory of causation regarding the licensing issue is purely speculative and that the result would have been the same regardless of whether Defendants raised the contractor licensing defense, because Mr. Schiff lacked credibility at trial. In support, Defendants cite *Henry v. Ahern*, 21-0438 (La. App. 4 Cir. 2/9/22), 335 So.3d 871. There, this court affirmed summary judgment dismissal of a plaintiff's malpractice claim against his former attorney who failed to timely file an application for writ of certiorari with the Supreme Court challenging an adverse decision from the court of appeal.

We do not find *Henry* analogous to the instant matter. In *Henry*, the defendant-attorneys argued that the court of appeal had already affirmed the unfavorable judgment against the former client, and submitted evidence demonstrating that the Supreme Court granted 7.77% of all non-*pro se* civil writ applications in the prior three years, rendering it unlikely that a timely writ application would have been granted and even more unlikely that the Supreme Court would have reversed the adverse judgment.

In this case, although genuine issues of material fact remain as to whether Ms. Pollard's licensure would have been a viable defense, Mr. Schiff's argument that Defendants could have raised the defense to mitigate his losses at trial does not fall within the realm of pure speculation at issue in *Henry*. To the contrary, Louisiana courts have recognized that the failure to raise defenses on behalf of a client may render an attorney liable for malpractice. *See, e.g., Frisard v. State Farm Fire and Cas. Co.*, 06-2353 (La. App. 1 Cir. 11/2/07), 979 So.2d 494; *Louisiana Machinery Rentals, L.L.C. v. Kean Miller, L.L.P.*, 17-1768 (La. App. 1 Cir. 2/20/19) (*unpub.*). Moreover, Defendants submitted no evidence demonstrating that the *Pollard* trial court's unfavorable view of Mr. Schiff's credibility would have prevented it from fairly administering the law, had the issue of Ms. Pollard's licensure been raised and proven at trial.

Lastly, Defendants argue that asserting Ms. Pollard's alleged status as an unlicensed contractor would not have changed the outcome of the *Pollard* suit. In support, Defendants cite the fact that the *Pollard* trial court found Mr. Schiff entered the contract with Ms. Pollard in bad faith and thus cannot avail himself of the potential nullity of his contract with Ms. Pollard due to his own "unclean

hands."[7]  In *Maroulis v. Entergy Louisiana, LLC*, 21-00384 (La. 6/8/21), 317 So.3d 316, the Supreme Court addressed the "clean hands" doctrine in the context of an unlicensed contractor.  There, a third-party defendant contractor sought dismissal from the suit on the basis that its construction contract with the principal defendant was void because it was not a licensed contractor in this state, in violation of the State Licensing Law.  The Supreme Court held that the contractor could not invoke its own status as unlicensed contractor to avoid responsibility for damages by raising the nullity of the contract, citing La. C.C. art. 2033 and 1984 Revision Comment (c) which states: "[A] party who knew or should have known at the time of contracting of a defect that made the contract absolutely null may not avail himself of the nullity when the purpose of the illegal contract has been accomplished."

The reasoning underpinning the Supreme Court's opinion in *Maroulis* does not apply here.  Unlike the party seeking to invoke the nullity of the contract in *Maroulis*, Mr. Schiff does not argue that Defendants should have raised his own failure to comply with the State Licensing Law to nullify the contract with Ms. Pollard.  Moreover, the fact that the *Pollard* trial court found that Mr. Schiff entered into the contract with Ms. Pollard in bad faith does not amount to a finding that Mr. Schiff knew or should have known that Ms. Pollard was not a licensed contractor, which was the basis for the Supreme Court's holding in *Maroulis*.

---

[7] La. C.C. art. 2033, provides, in pertinent part, as follows:

> An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed. . . .  Nevertheless, a performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null.

Rather, genuine issues of fact remain as to whether Mr. Schiff knew or should have known that Ms. Pollard was unlicensed during the existence of their contract.

Based upon our *de novo* review, we find that Mr. Schiff adequately demonstrated the existence of genuine issues of material fact regarding whether Defendants' failure to investigate and raise the issue of Ms. Pollard's status as an unlicensed contractor contributed to the unfavorable judgment against him in the *Pollard* suit. Accordingly, we find that the trial court erred in granting summary judgment in Defendants' favor.

## **DECREE**

For the foregoing reasons, the judgment of the trial court granting the defendants' motion for summary judgment is reversed. This matter is remanded to the trial court for further proceedings.

**REVERSED AND REMANDED**