KNOLL, J.
| TThis civil case involves a legal malpractice claim brought by MB Industries, LLC (“MBI”) against attorneys Steven Durio and John Weinstein. Durio and Weinstein represented MBI in an ultimately unsuc *1176 cessful lawsuit against former MBI employees Mark Massey and Sam Lavergne. Rather than appeal the unfavorable judgment, MBI chose to file the instant malpractice action.
There are two issues that need clarification in disposing of this case: first, whether a party’s failure to appeal an underlying judgment waives any right to bring a legal malpractice claim based on that judgment. Second, whether summary judgment was properly granted in light of MBI’s failure to introduce expert testimony to establish the applicable standard of care which would demonstrate the attorneys’ actions fell below that standard.
After our careful study and analysis, we find, in response to the first issue, Louisiana law does not impose a per se rule requiring an appeal before a malpractice action may be filed. However, in answer to the second issue, we find a party alleging legal malpractice must introduce expert testimony to establish the standard of care except in those rare cases involving malpractice so egregious that |2a lay jury could infer the defendant’s actions fell below any reasonable standard of care. In conclusion, as explained in greater detail below, under the particular circumstances of this case we find there are no genuine issues of material fact and plaintiff has failed to establish it will be able to satisfy its evidentiary burden of proof at trial; therefore, defendants are entitled to judgment as a matter of law. Thus, the judgment of the court of appeal is reversed, and the trial court judgment is reinstated.
FACTS AND PROCEDURAL HISTORY
The events leading up to this lawsuit began in 1998 when Mark Massey, a petroleum engineer, began to consider purchasing the assets of Nautica Marine Services, a company which was undergoing bankruptcy. Nautica Marine was in the business of manufacturing, leasing, and selling modular steel buildings, primarily to the petrochemical industry.
Massey asked Fred Gossen, Jr. to help evaluate the potential purchase. Gossen, in turn, brought in Sam Lavergne, an attorney with an engineering background. Massey and Gossen formed Moon Ventures, LLC, with Massey as majority owner, and in September 1998 Moon Ventures purchased the residual assets of Nautica Marine. At Gossen’s urging, the employees of Moon Ventures, including Massey and Lavergne, signed non-compete agreements covering twelve specific parishes in southwestern and southern Louisiana.
Moon Ventures was no more successful than Nautica Marine. Within a year, it too was placed into involuntary bankruptcy. In September 1999, just before Moon Ventures went into bankruptcy, its assets were transferred to MBI, a newly formed company run by Dave Dooley and Fred Gossen.
Shortly thereafter, Sam Lavergne and Mark Massey formed two new businesses, J. Bass, LLC and Hunter Buildings, LLC, both of which directly compete with MBI. On February 14, 2000, MBI, through its attorney John | sWeinstein, filed suit against Lavergne and Massey alleging violation of the non-compete agreements they had signed with Moon Ventures. MBI also claimed Lavergne and Massey misappropriated confidential MBI trade secrets including customer lists, job information, and proprietary engineering data and drawings. The case was soon removed to federal bankruptcy court because of its close connection to the ongoing Moon Ventures bankruptcy proceedings.
On August 1, 2000, Steven Durio enrolled as co-counsel along with Weinstein. On or about March 15, 2001, Fred Gossen *1177 delivered a box containing original documents and exhibits to Durio’s firm. Gos-sen avers he spent weeks compiling and organizing this evidence, which included “all relevant agreements, contracts, documents, legal strategy, and other sensitive, confidential and attorney/client privileged information.”[1] One of Durio’s associates turned the box over to opposing counsel as part of plaintiffs document production. Crucially, he neglected to make copies of the documents before turning them over.
On July 9, 2001, Durio withdrew as co-counsel, leaving Weinstein to represent MBI in the proceedings before the bankruptcy court. In early 2002, the defendants filed a motion for summary judgment, which the bankruptcy court denied. On March 27, 2002, the bankruptcy court remanded the case to state court.
Some time before November 2002, MBI asked Durio to reenroll as counsel and take over the case. From this time forward, Weinstein took no active part in the litigation. However, it was several months before Durio filed a formal motion to enroll and Weinstein filed a formal motion to withdraw.[2]
14On November 20, 2002, Lavergne and Massey filed a motion to set a trial date. The court set a bench trial for May 27, 2003, and issued a pretrial scheduling order setting deadlines for, among other things, propounding discovery and amending pleadings. Weinstein formally withdrew from representation on February 28, 2003, at which time he incorrectly represented to the court that no trial date had been set. On April 3, 2003, Durio filed a motion to continue trial.[3] The defendants agreed to postpone the trial date in light of Dave Dooley’s recent heart surgery, but opposed reopening discovery or continuing any of the pretrial deadlines. The trial date was continued to November 10, 2003.
Durio officially enrolled as counsel in July 2003. At the same time, he filed a motion requesting leave to file an amended petition, add additional defendants, and request trial by jury. The court denied the motion as untimely under its pretrial scheduling order and refused to allow MBI to add the additional defendants.
On March 11, 2003, Gossen emailed Du-rio to ask what had happened to the box of documents he had prepared. It was apparently at this time that Durio realized the box was missing, and he made several attempts to find out who had it. In the summer of 2003, Durio and Gossen went to the offices of Frank Neuner, attorney for Massey and Lavergne, where they were able to recover most of the contents of the box. However, some documents were missing, and the rest were out of order and disorganized.
MBI was apparently displeased with the quality of Durio’s representation. Fred Gossen spoke with attorney Milo Nickel, who suggested MBI should consider the possibility of filing a malpractice suit. MBI then contacted attorney Scott Love, who advised that a malpractice claim was *1178 possible if MBI were to lose at trial. |sLove began preparing for a malpractice action, and one of the associates at his firm sat in on the trial to take notes on Durio’s conduct.
Trial was held before the Hon. Thomas Duplantier in November 2003. At the close of trial, the court entered judgment for the defendants. Judge Duplantier found MBI failed to produce any evidence it had any valid trade secrets or that Lavergne or Massey had wrongfully used any of MBI’s proprietary information. With respect to the noncompetition agreement, the court found the only competition took place in East Baton Rouge Parish, which was not one of the twelve parishes listed under the noncompetition agreement. The court found no evidence the defendants competed with MBI in any of those twelve parishes.
Formal judgment was entered on December 2, 2003. On December 8, 2003, Durio sent an email to Gossen and Dooley stating the chances of a successful appeal were less than fifty percent. He also said he would not continue to represent MBI on a contingency basis and would only file an appeal if he were paid by the hour.
On December 10, 2003, Dave Dooley wrote a letter to Durio asking him to forward all MBI litigation files to Scott Love. The next day, Love wrote to Durio and Weinstein explaining that he had been retained to determine whether an actionable malpractice lawsuit existed. Durio responded with a letter agreeing to surrender the files and warning MBI of the approaching deadlines to file an appeal. MBI did not appeal Judge Duplantier’s ruling, and the judgment became final.
MBI filed the instant malpractice litigation on March 16, 2004. The petition as amended alleges both Durio and Weinstein failed to meet the trial court cutoff dates to amend the petition, add additional defendants, and request a jury trial. As to Durio alone, MBI alleges he negligently lost the box of documents, some of which were privileged or proprietary, and failed to seek a protective order with respect to those documents. MBI also alleges Durio failed to elicit necessary | (¡testimony and evidence at trial. As to Weinstein alone, MBI alleges he mishandled the case by failing to pursue certain claims in bankruptcy court, by withdrawing from the case while a trial date was looming, and by falsely representing to the court that no trial date had been set when he filed a motion to withdraw.
Durio and Weinstein filed separate motions for summary judgment on August 10, 2009, more than five years after the beginning of the litigation. The Hon. Edward Rubin granted Durio’s motion for summary judgment on September 28, 2009, and formal judgment was entered on October 6, 2009.
MBI appealed, and the Third Circuit reversed. MB Industries, LLC v. CNA Ins. Co., 10-321 (La.App. 3 Cir. 11/3/10), 52 So.3d 168. While the lower courts have been faced with the troubling issues raised by defendants’ motions for summary judgment in this legal malpractice proceeding, this Court has not directly addressed this area of law. We granted defendants’ writs at MB Industries, LLC v. CNA Ins. Co., 10-303, 10-304 (La.6/3/11), 63 So.3d 1024, 1025 to further study the proper treatment in disposing of these issues as guidance to the lower courts for their consideration of such cases.[4]
DISCUSSION
I. MBI’s Failure to Appeal the Underlying Judgment
As a threshold question, we must decide whether MBI waived its right to bring a *1179 legal malpractice suit by not timely appealing the underlying judgment against it. Defendants argue, under the principles of equitable estoppel, a defendant who fails to perfect an appeal effectively waives his right to seek a remedy in malpractice.[5] Although defendants cite several court of appeal decisions supporting this theory, the issue is res nova for this Court.
Murphy v. Gilsbar, 02-205 (La.App. 1 Cir. 12/31/02), 834 So.2d 669, writ denied, 03-676 (La.5/30/03), 845 So.2d 1057, is a state court legal malpractice proceeding arising out of the alleged mishandling of a federal employment discrimination action. During a status conference in the underlying federal case, the magistrate judge informed attorney Denise Vinet that her client’s claim was untimely under federal law. Id. at 670. The defendant filed a motion for summary judgment based on this apparent untimeliness, which was granted. Murphy responded by filing a malpractice suit against Vinet in state court. Meanwhile, additional legal research revealed Murphy’s original claim had actually been timely filed, and the defendant openly admitted its motion for summary judgment was ill-founded. In response, Vinet filed a motion for relief from judgment under Fed.R.Civ.P. 60(b). Despite numerous requests from Vinet, Murphy refused to participate in the motion for relief from judgment. The federal court found Vinet lacked standing to bring a motion for relief on Murphy’s behalf without her consent,[6] and thus refused to set aside the summary judgment. Id. at 671.
Vinet then moved for summary judgment on Murphy’s malpractice claim. The trial court granted the motion, finding Murphy’s refusal to participate in the motion for relief from judgment acted as “absolute estoppel” to any malpractice claim. The court of appeal agreed, holding “the trial court did not err in concluding that, by refusing to participate in the hearing that could have resurrected her discrimination suit, Murphy waived her right to proceed with her malpractice suit.” Id. at 672.
In Gross v. Pieno, 04-820 (La.App. 5 Cir. 12/28/04), 892 So.2d 662, writ denied, 05-218 (La.4/22/05), 899 So.2d 582, the court applied the basic principle |sset forth in Murphy v. Gilsbar to a different set of facts. Attorney Larry Pieno was hired to represent the Gross family in a lawsuit, but performed no work on the case for over three years. Shortly thereafter, the defendants filed a successful motion for dismissal based on abandonment.[7] Pieno filed a motion to set aside the dismissal and requested a hearing. Before the motion was set for hearing, the Gross family fired Pieno and hired a new attorney who negotiated a settlement on the underlying tort suit and filed a malpractice suit against Pieno. Id. at 663.
The trial court entered summary judgment for Pieno, finding the settlement es-topped the Gross family from pursuing a malpractice claim. Plaintiffs appealed, arguing they settled in an attempt to recover something from the lawsuit and thereby mitigate the damages caused by Pieno’s *1180 malpractice. Id. at 665. The court of appeal nonetheless affirmed, as it found Pieno’s motion to set aside the judgment raised valid arguments which may have justified granting the requested relief. By settling the suit, plaintiffs effectively waived those potentially meritorious claims. Id.
The parties also cite American Reliable Ins. Co. v. Navratil, 445 F.3d 402 (5th Cir.2006).[8] American Reliable hired Boris Navratil to defend its insured, Eli Prud-homme, in a lawsuit in state court. The case resulted in an unfavorable jury verdict against American Reliable in the full amount of the $25,000 policy limit and an additional judgment of more than $420,000 against Prudhomme alone. Navratil advised American Reliable there were valid grounds for an appeal. American Reliable instead settled the claim for $550,000 (over $100,000 more [9than the jury verdict) and filed a malpractice lawsuit against Navratil in federal court. The trial court granted Navratil’s motion for summary judgment, citing Gross v. Pieno for the proposition that American Reliable’s voluntary settlement barred its malpractice suit. Id. at 403-04.
The Fifth Circuit reversed, holding the “settlement of the underlying claim did not have the preclusive effect of barring the client from bringing an independent action for legal malpractice.” Id. at 404. While a “client has a duty to mitigate damages caused by its attorney’s malpractice,” the duty does not “require the client to undertake measures that are unreasonable, impractical, or disproportionately expensive considering all of the circumstances.” Id. at 406. The court noted a strict rule requiring an appeal in every case “could cause the client to miss a favorable but fleeting opportunity to make a financially favorable settlement; and settlement may often be a better method of damage mitigation than is appeal.” Id. at 406-07. The court found American Reliable had acted reasonably in settling the case rather than filing a “risky and speculative appeal” and thus had not waived its right to file a malpractice suit.
Defendants, following the lead of Murphy v. Gilsbar, couch their arguments in terms of equitable estoppel. Equitable estoppel is a jurisprudential doctrine involving “the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct.” Morris v. Friedman, 94-2808 (La.11/27/95), 663 So.2d 19, 25 (quoting John Bailey Contractor, Inc. v. State, Dept. of Transportation and Development, 439 So.2d 1055, 1059 (La.1983) and American Bank and Trust Co. v. Trinity Universal Ins. Co., 251 La. 445, 205 So.2d 35, 40 (1967)). There are three elements required to establish equitable estoppel: (1) a representation by conduct 110or work; (2) justifiable reliance thereon; and (3) a change of position to one’s detriment because of the reliance. Id.
A claim of waiver by failure to appeal is thus not “equitable estoppel” as the doctrine has been defined by this Court. Strictly speaking, equitable estoppel applies only where a party has made false or misleading representations of fact and the other party justifiably relied on the representation. State v. Mitchell, 337 So.2d *1181 1186, 1188 (La.1976). We must narrowly construe this argument, as “estoppel is not favored in our law,” Id., and estoppel is a “doctrine of last resort.” Howard Trucking Co., Inc. v. Stassi, 485 So.2d 915, 918 (La.1986). Because MBI’s decision not to pursue an appeal was not a representation of fact which Durio or Weinstein justifiably relied on to their detriment, equitable es-toppel does not apply.
The issue is more properly framed as a failure to mitigate damages under Civil Code article 2002,[9] which states: “An obli-gee must make reasonable efforts to mitigate the damage caused by the obligor’s failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.” Id. If an aggrieved party could have cured the effects of an unfavorable judgment by appeal, its decision not to appeal may be a failure to mitigate under article 2002. The failure to mitigate damages is an affirmative defense, and the burden of proof is on the party asserting the defense. Wooley v. Lucksinger, 09-571 (La.4/1/11), 61 So.3d 507, 607; A Better Place, Inc. v. Giani Investment Co., 445 So.2d 728, 732 (La.1984).
The scope of a party’s duty to mitigate depends on the particular facts of the individual case, and a party is not required to take actions which would likely InProve unduly costly or futile.[10] In Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968), this Court held a duty to mitigate encompassed only what a “reasonably prudent man” would have done to lessen his damages, given the facts known to him at the time and avoiding the temptation to view the ease through hindsight. Id. at 826. The plaintiff, John Un-verzagt, hired Young Builders, Inc. to install a home swimming pool. The pool soon developed cracks, and Unverzagt sued for faulty installation. The defendant countered that Unverzagt should have mitigated his damages by making repairs at an estimated cost of between $1,000 and $1,500. Id. at 825. However, other experts opined that testing would be necessary to find the true cause of the defects in the pool and warned the repairs suggested by the defendant may prove ultimately fruitless. This Court held Unverzagt had no duty to make those repairs because “the record does not affirmatively establish that the work mentioned could have been completed for this sum or that it would have averted the ultimate disaster.” Id. at 827.
Defendants urge this Court to adopt a per se rule requiring an appeal in all cases before a legal malpractice action may be pursued. However, the defendants do not cite, and this Court has not found, any reported decision imposing such a per se rule.[11] Instead, the “theory of abandon *1182 ment of a legal malpractice claim has 112been traditionally narrow, allowed only when an adverse judgment in the underlying action would likely have been corrected on appeal.” Steven Witsoski, Appellate Malpractice, 4 J.App. Prac. & Process 577, 585 (2002).
We agree with plaintiff that a per se rule would be untenable, as there are many types of malpractice which would effectively preclude any possibility of a successful appeal.[12] For instance, if an attorney neglects to file a petition before the expiration of a prescriptive period, the client would have no remedy on appeal. In this case, MBI argues that Durio failed to elicit necessary testimony at trial, therefore creating an inadequate factual record. If MBI is correct, an appeal would have been pointless because the record on appeal is necessarily limited to facts properly before the trial court.[13] There is no benefit in requiring an aggrieved party to file a frivolous appeal. Moreover, requiring a party to wait until the completion of the appellate process would, in some circumstances, cause peremption to run on the malpractice claim.[14]
In American Reliable v. Navratil, the federal Fifth Circuit predicted[15] this Court would adopt a “reasonable person” standard similar to the one set forth in Unverzagt:
113Although as a general principle, a client has a duty to mitigate damages caused by its attorney’s malpractice, such a duty cannot require the client to undertake measures that are unreasonable, impractical, or disproportionately expensive considering all of the circumstances.
American Reliable Ins. Co. v. Navratil, 445 F.3d 402, 406 (5th Cir.2006).
Similarly, a leading treatise on legal malpractice states failure to pursue an appeal or other legal review is “not a defense unless pursuit of the remedy would have made a difference.” Mallen & Smith, Legal Malpractice, § 22.12 (2011 ed.) These authorities are in accord with this Court’s holding in Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968), which applies a “reasonably prudent man” standard. Id. at 826.
We therefore hold a party does not waive its right to file a legal malpractice *1183 suit by not filing an appeal of an underlying judgment unless it is determined a reasonably prudent party would have filed an appeal, given the facts known at the time and avoiding the temptation to view the case through hindsight. This analysis is heavily dependent on the specific facts of the case. A court should take into account any relevant factors including, but not limited to, the nature of the alleged malpractice, the likelihood an appeal would have been successful, the likely expense of the appeal, and the possibility the peremp-tive period on the legal malpractice claim would have expired during the course of the appeal.
Having established the failure to appeal is not a impediment to a legal malpractice action, we now address the issue urged by defendants in the present case. As this case arises on a motion for summary judgment, we must give the benefit of the doubt to MBI as the non-moving party and draw any reasonable factual inferences in its favor. Hill v. Shelter Mutual Ins. Co., 05-1783 (La.7/10/06), 935 So.2d 691, 693. We cannot say, as a matter of law, MBI’s decision 114not to appeal was outside the bounds of a reasonably prudent actor. First, MBI had reason to believe the likelihood of reversal on appeal was relatively low. MBI consulted two attorneys, Durio and Love, both of whom advised any appeal was unlikely to be successful. This is especially true where the judgment was entered after a full trial on the merits, meaning the trial judge’s ruling would have been reviewed under the strict standard of the manifest error doctrine.
Moreover, the very nature of the alleged malpractice was such that an appeal could not provide MBI with an adequate remedy. MBI alleges Durio failed to timely file an amended petition, lost a box of relevant documents, and did not elicit crucial testimony at trial. None of these alleged acts of malpractice could be remedied on appeal. For example, if a box of documents has been lost via an attorney’s negligence, filing an appeal will not make those documents reappear. Given these circumstances, we find there is a genuine issue of material fact as to whether MBI acted as a “reasonably prudent party” in choosing not to pursue a costly and time-consuming appeal.
II. Whether There Is a Genuine Issue of Material Fact
Having disposed of the threshold issue, we must decide whether MBI has met its burden of introducing admissible evidence sufficient to create a genuine issue of material fact as to defendants’ liability. Defendants urge MBI’s failure to introduce any expert testimony means it has not met this burden.
On a motion for summary judgment, this Court reviews the record de novo to determine whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. La. Code Civ. Proc. art. 966; Louisiana Safety Association of Timbermen Self-Insurers Fund v. Louisiana Ins. Guaranty Association, 09-23 (La.6/26/09), 17 So.3d 350, 353. A moving party who does not bear the burden of proof at trial must point out an absence of factual support for one or more elements essential to the adverse party’s claim. La. Code Civ. Proc. art. 966(C)(2). If the non-moving party fails to produce contrary factual support sufficient to establish it will be able to satisfy the evidentiary burden of proof at trial, there is no genuine issue of material fact. Id. Whether a particular fact in dispute is “material” for summary judgment purposes is viewed in light of the substantive law applicable to the case. Richard v. Hall, 03-1488 (La.4/23/04), 874 So.2d 131, 137.
*1184 In order to establish a valid legal malpractice claim, MBI must show evidence sufficient to convince a reasonable trier of fact of (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. Teague v. St. Paul Fire and Marine Ins. Co., 07-1384 (La.2/1/08), 974 So.2d 1266, 1272. MBI has the burden of proving the defendant failed to “exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality.” Ramp v. St. Paul Fire and Marine Ins. Co., 263 La. 774, 269 So.2d 239, 244 (1972). Typically, a plaintiff will retain an expert witness both to establish the standard of care for prudent attorneys in the relevant locality and to show the defendant’s actions fell below the standard of care. See Sunset Ins. Co. v. Gomila, 02-633 (La.App. 5 Cir. 12/30/02), 834 So.2d 654, 657; Morgan v. Campbell, Campbell & Johnson, 561 So.2d 926, 929 (La.App. 2 Cir.1990).
MBI first argues it has no obligation to retain an expert witness at this point in the proceeding because the trial court has not yet set a deadline for completing expert discovery. This argument reflects a fundamental misunderstanding of summary judgment procedure. There is no requirement for the defendant to wait until ah discovery deadlines have passed before filing a motion for summary judgment, and a defendant’s motion for summary judgment “may be made at any time.” La.Code of Civ. Proc. art. 966(A)(1). Once the defendant’s motion is filed, the plaintiff must present sufficient factual support to prove every essential element |1fiof his claim. La.Code of Civ. Proc. art. 966(C)(2). He cannot simply tell the court that the evidence will be forthcoming at some unknown later date. See Samaha v. Rau, 07-1726 (La.2/26/08), 977 So.2d 880, 887-88.[16]
MBI did seek the counsel of attorney Scott Love, who believed Weinstein and Durio committed malpractice. MBI asks this Court to accept Love’s affidavit as expert testimony. However, Love was not hired as an expert witness; he was retained as counsel to sue Weinstein and Durio for malpractice.[17] Nonetheless, this Court has reviewed Love’s affidavit. The affidavit does not demonstrate Love has special “knowledge, skill, experience, training, or education” in the area of legal malpractice and thus does not meet the necessary prerequisites of La.Code Evid. art. 702. Just as importantly, the affidavit does not set forth the relevant standard of care or explain the specific acts by Wein-stein and Durio which, in his opinion, fell below the standard of care.
MBI’s failure to introduce the testimony or affidavit of an expert witness is not necessarily fatal to its claim. In Ramp v. St. Paul Fire & Marine Ins. Co., 263 La. 774, 269 So.2d 239 (1972), this Court recog *1185 nized (albeit in dicta,) that expert testimony is not necessary where the alleged legal malpractice is “obvious” or the defendant attorney committed “gross error.” Id. at 244. Indeed, the Ramp court suggested an attorney’s malpractice could be so obvious as to be the subject of | ^judicial notice. Accord, Frisard v. State Farm Fire & Cas. Co., 06-2353 (La.App. 1 Cir. 11/2/07) 979 So.2d 494, 498 (attorney’s failure to appear is obvious negligence and no expert testimony is needed); Schlesinger v. Herzog, 95-1127 (La.App. 4 Cir. 4/3/96), 672 So.2d 701, 708 (“judicial notice of obvious legal negligence could be taken regardless of expert testimony”); Watkins v. Sheppard, 278 So.2d 890, 892 (La.App. 1 Cir.1973).
We have applied the same principle in medical malpractice cases: “Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient’s body, from which a lay person can infer negligence.” Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La.10/17/94), 643 So.2d 1228, 1233.
Therefore, because MBI did not introduce any competent expert witness testimony or affidavit, summary judgment for the defendants is proper unless the undisputed facts establish malpractice which was so obvious that a lay person would recognize it as falling beneath the necessary standard of care. We address the evidence against each defendant in turn.
MBI first argues Weinstein committed malpractice during the course of the Moon Ventures bankruptcy proceeding by, among other things: failing to seek a hearing on injunctive relief, advising MBI to sign a compromise converting its position from a secured position to an unsecured position, testifying to the bankruptcy trustee to the detriment of his client, failing to pursue an action regarding certain allegedly fraudulent statements, and failing to include certain additional claims in the petition. Having reviewed the memorandum and exhibits filed in opposition to the Weinstein motion for summary judgment, we do not find any evidence of a breach of the standard of care which is so clear-cut that a lay jury would recognize it as malpractice. Indeed, these allegations are so far outside the | ^experience of the average juror that expert testimony would be absolutely crucial to establish a breach of the standard of care.
MBI also alleges Weinstein committed malpractice by withdrawing from the case in February 2003, approximately three months before the then-scheduled trial date. MBI urges this violated the Rules of Professional Conduct by withdrawing too close to the trial date and by misrepresenting to the court that no trial date had been set. The mere fact of Wein-stein’s withdrawal is insufficient to establish negligence, as MBI does not explain how it suffered any prejudice as a result. Indeed, Rule 1.16 of the Rules of Professional Conduct provides a lawyer may withdraw unless there will be “material adverse effect on the interests of the client.” MBI has not demonstrated any material adverse effect caused either by Weinstein’s February 2003 withdrawal or by his misleading statement to the court.
Although an attorney’s unexpected withdrawal may be prejudicial if he leaves a client without representation shortly before trial, this is not what happened here. At the time Weinstein withdrew, Durio was lead counsel for MBI. Indeed, according to his billing records, Weinstein had not been working on the case since August 2002, months before the formal withdrawal. MBI knew Weinstein had filed his motion to withdraw, but did not object. Finally, any potential prejudice which *1186 Weinstein’s withdrawal might have caused MBI was mooted when trial was continued until November 2003, giving Durio several more months to adequately prepare for trial. For these reasons, we find there is no genuine issue of material fact which would support a verdict in favor of MBI against defendant Weinstein.
We next turn to the allegations against Steven Durio. First, MBI alleges he negligently missed the pretrial deadlines to add additional defendants and request a jury trial. However, MBI does not explain how adding additional defendants, in this case engineering firms EQE and Porta-Kamp, would have changed the eventual outcome of the litigation. MBI lost this case because it was unable to | ,9prove the existence of any valid trade secrets. Simply adding more defendants to the claim would not have changed the outcome. Nor does MBI explain how it was prejudiced by the denial of its request for a jury trial. MBI does not allege that, given the record before him at trial, Judge Duplantier committed any errors of fact.[18] We therefore find no reason or support to believe the result would have been different had the case been tried to a jury. We find this argument seeks, in hindsight view, the proverbial “second bite at the apple.”
MBI also alleges Durio performed inadequately at trial. Specifically, it claims he “did not ask questions of key witnesses, thereby failing to expose and put on the record important facts,” and “did not call all key witnesses to testify, depriving the record of important testimony and corroboration of key facts.” These vague allegations are not sufficient to oppose a motion for summary judgment. MBI makes no attempt to explain how this alleged additional testimony or evidence could have changed the outcome of the case.[19] And again, this is precisely the kind of allegation which requires expert testimony to establish whether Durio’s actions fell beneath the applicable standard of care. Without the assistance of an expert, a lay jury would have no basis for deciding whether the decision to call a particular witness or introduce a certain document was within the standard of care for a reasonably competent attorney in the Lafayette area.
There is one allegation of malpractice on the part of Durio’s firm which is so egregious that a reasonable lay jury could infer his actions fell beneath any | ^reasonable standard of care. In March 2001, Fred Gossen gave Durio a box containing a significant amount of documentary evidence including “all relevant agreements, contracts, documents, legal strategy, and other sensitive, confidential and attorney/client privileged information.” The documents were given to opposing counsel as part of plaintiffs document production. However, Durio’s associate failed to make any copies of the documents first. For two years, the whereabouts of this box was unknown. Although Gossen and Durio eventually managed to recover many of the documents, some remained missing, and the *1187 recovered documents were unorganized and out of order. A reasonable lay jury could certainly find handing over a box of client documents without making copies is negligent under any standard. Thus, no expert testimony was necessary to establish these actions fell below the applicable standard of care.
However, it is not enough to simply show Durio acted negligently. MBI must also introduce evidence of causation. Although this Court disavowed the “case within a case” doctrine in Jenkins v. St. Paul Fire & Marine Ins. Co., 422 So.2d 1109, 1110 (La.1982), we reiterated that causation “is an essential element of any tort claim.” At the very least, MBI must establish some causal connection between the alleged negligence and the eventual unfavorable outcome of the litigation. Id. It has not done so.
Although MBI claims some documents were lost, it does not explain which specific documents were never recovered. Nor does it explain how the introduction of those documents prejudiced its ability to win this lawsuit. MBI has therefore failed to establish a “prima facie case that the attorney’s negligence caused [it] some loss.” Id. Therefore, we find entry of summary judgment is proper.
CONCLUSION
For the above-stated reasons, we find there is no genuine issue of material fact and judgment for defendants should be entered as a matter of law. The 12i judgment of the Court of Appeal is hereby reversed, and the judgment of the District Court is reinstated.
REVERSED; DISTRICT COURT JUDGMENT REINSTATED.
JOHNSON, J., concurs in part, dissents in part, and assigns reasons.

.According to the "legend” prepared by Gos-sen, the box included: documents regarding the formation and foundation of Moon Ventures and MBI; evidence of transactions between Moon Ventures/Mark Massey and MBI; the non-compete agreements; information about the sales accounts managed by Sam Lavergne; correspondence by Sam Lavergne and Mark Massey; correspondence with engineering firms Wilfred Baker Engineering and EQE Engineering; agreements and correspondence between MBI and Exxon; and alleged MBI client lists.

. The record does not make clear the reason for this delay.

. Because Durio was still not enrolled as counsel, attorney Gary Russo was retained as special counsel solely for the purposes of filing the motion to continue trial.

. We certified these questions to the parties to specifically address in their briefs.

. This doctrine is sometimes referred to as "abandonment.” Mallen & Smith, Legal Malpractice, § 22.12 (2011 ed.)

. For contrary authority, see Tanner v. Travelers Ins. Co., 389 So.2d 721, 724 (La.App. 4 Cir.1980)(on rehearing), holding that an attorney accused of malpractice has standing to move to annul the underlying judgment against his client to protect his own rights.

.The then-effective version of La.Code of Civ. Proc. art. 561 stated: "An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years.”

. Although we are not bound by the pronouncements of federal courts regarding questions of state law, we give those opinions due consideration in guiding our analysis. Chittenden v. State Farm Mutual Auto. Ins. Co., 00-0414 (La.5/15/01), 788 So.2d 1140, 1149 n. 21.

. Although article 2002 is found in Book III, Title IV, titled “Conventional Obligations and Contracts,” the duty to mitigate applies equally to victims of a delict. Aisole v. Dean, 574 So.2d 1248, 1253-54 (La.1991).

. See Merrell v. State, 415 So.2d 660, 666-67 (La.App. 3 Cir. 1982) (No reduction of damages where plaintiff had not undergone risky surgery which, even if successful, would only have reduced his disability by a small amount); Dupre v. Tri-Parish Flying Seivice, Inc., 355 So.2d 554, 557 (La.App. 3 Cir.1978)("an injured person may recover to the full extent of his injury where he shows reasonable grounds for his failure to make an effort to lessen his damages”); St. Charles Parish Waterworks Dist. No. 2 v. Point Landing, Inc., 332 So.2d 517, 522 (La.App. 4 Cir.1976)("While it is well settled that a plaintiff must take reasonable steps to minimize damages he is not required to undertake a risky venture.”)

. See Segall v. Segall, 632 So.2d 76, 78 (Fla.Dist.Ct.App.1993): "We are unable to establish a bright-line rule that complete appellate review of the underlying litigation is a condi *1182 tion precedent to every legal malpractice action.” Under Florida law, the doctrine of abandonment only applies if the court finds the underlying judgment was a result of "judicial error” which "would most likely have been corrected on appeal.” Id. Accord, Hewitt v. Allen, 118 Nev. 216, 43 P.3d 345, 349 (2002)("the attorney defendant has the burden of proof to establish that an appeal would have been successful”); Flint v. Hart, 82 Wash.App. 209, 917 P.2d 590, 596 (1996).

. See Eastman v. Flor-Ohio, Ltd., 744 So.2d 499 (Fla.Dist.Ct.App.1999), where the defendant firm’s failure to comply with strict Florida laws regarding notice of a rent increase led to a judgment against plaintiff. Because this malpractice could not be remedied on appeal, plaintiff was deemed not to have abandoned his claim by choosing not to file an appeal. Id. at 502-04.

. Merrill v. Theard, 187 La. 55, 174 So. 107, 108 (1937); Distefano v. B & P Constr., Inc. 04-25 (La.App. 5 Cir. 5/26/04), 874 So.2d 407, 411.

. In Reeder v. North, 97-239 (La.10/21/97), 701 So.2d 1291, this Court held that a pending appeal does not toll the expiration of the statutory peremptive period for a legal malpractice claim. See La.Rev.Stat. § 9:5605.

. Specifically, the court held: "We are instead convinced that were the Supreme Court of Louisiana to decide this as a case of first impression today, it would distinguish Pieno and hold that [the] settlement of the underlying case did not have the preclusive effect of barring the client from bringing an independent action for legal malpractice.” American Reliable, 445 F.3d at 404.

. If a motion for summary judgment is filed early in the proceedings, before a party has had reasonable time to retain an expert, the trial court may continue the hearing on the motion in order to give the party an adequate opportunity to find an expert and obtain his testimony. La.Code of Civ. Proc. art. 966(B). However, MBI did not ask for a continuance and, even if it had, the continuance should have been denied. This case had been ongoing for over 5 years when the motion for summary judgment was filed. This is more than enough time for MBI to find and hire an appropriate expert. See Newsome v. Homer Memorial Medical Center, 10-0564 (La.4/9/10), 32 So.3d 800, 802.

. We note MBI has since filed suit against Love and his firm, alleging that he committed malpractice in his prosecution of this litigation. Given the allegations it made in that case, it is exceedingly odd that MBI now claims Love is a qualified expert.

. Fred Gossen testified that he “wholeheartedly agreed” with Judge Duplantier’s conclusion that MBI had failed to meet its burden of producing evidence of valid corporate trade secrets, given the evidence Durio presented at trial.

. The deposition testimony of Fred Gossen describes, in general terms, some of the evidence which Gossen claims should have been introduced. However, Gossen was not present during the trial and did not read the trial transcript. He therefore lacks personal knowledge to testify whether or not that evidence had actually been introduced. Somewhat incredibly, MBI never deposed Durio or Weinstein despite having over five years to do so.