PAUL A. BONIN, Judge.
11 Richard Rondeno engaged William S. Vincent, Jr., an attorney, and other lawyers associated[1] with Mr. Vincent to represent him in a claim for damages arising out of a maritime accident. Apparently unsatisfied with his representation by the Vincent lawyers, Mr. Rondeno engaged replacement lawyers to pursue his maritime claim and then filed a legal malpractice claim against the Vincent lawyers. The initial basis of his legal malpractice claim was that the Vincent lawyers had failed to timely join as a party defendant in his federal lawsuit in Louisiana the owner of the vessel on which Mr. Rondeno was injured; he now also argues that the Vincent lawyers filed his lawsuit in a court without jurisdiction and proper venue.
While this legal malpractice suit was pending, the replacement lawyers added the vessel owner to the pending lawsuit. Mr. Rondeno, however, apparently discharged the replacement lawyers and began handling his maritime lawsuit without the assistance of counsel. Importantly for the purposes of this appeal, at |2no time during the pendency of the maritime lawsuit in Louisiana was there a judicial finding that the vessel owner was untimely joined as a party defendant. But Mr. Rondeno on his own motion obtained the voluntary dismissal of his pending federal lawsuit in Louisiana and filed a new lawsuit in a federal court in Texas in which he named the vessel owner among others. Shortly after that filing, the federal judge in Texas dismissed with prejudice the lawsuit as prescribed. (We are now informed that the United States Court of Appeals for the Fifth Circuit has affirmed the dismissal and the judgment is final.)[2]
With respect to the legal malpractice lawsuit, the Vincent lawyers filed a double-barreled exception of peremption and motion for summary judgment. Based upon these pleadings, the trial judge in a single judgment dismissed Mr. Rondeno’s suit with prejudice because he found that the legal malpractice suit was not filed within the peremptive periods established by La. R.S. 9:5605 A and, independently, that Mr. *518 Rondeno’s voluntary dismissal of the federal lawsuit in Louisiana waived his right to proceed with his legal malpractice claim. Mr. Rondeno appeals that judgment.
Mr. Rondeno, for his part and on the eve of the hearing on the exception and summary judgment motion, filed a motion to amend and supplement his petition to add additional claims.[3] The trial judge denied that motion, and Mr. Rondeno appeals from that judgment as well.
|aAs a result of our de novo review of the exception of peremption, we are unable to satisfactorily determine whether the Vincent lawyers, while they had responsibility for Mr. Rondeno’s maritime lawsuit, missed a recognizable deadline for the joinder of the vessel owner, and in the absence of expert testimony we cannot conclude that any knowledge of a missed deadline by the replacement lawyers constituted sufficient discovery of an alleged act to commence the running of the peremptive period against the Vincent lawyers. Thus, we cannot affirm the judgment sustaining the exception of per-emption.
But also on our de novo review of the summary judgment, we conclude that there is no genuine issue of material fact that a reasonably prudent party, given the facts known at the time and avoiding the temptation of viewing the case through hindsight, on these specific facts would not have voluntarily dismissed his pending maritime lawsuit in Louisiana when he did. And we thus say as a matter of law that Mr. Rondeno’s failure to mitigate any damages which he might have sustained precludes his maintaining this legal malpractice action against the Vincent lawyers. Accordingly, we affirm the summary judgment dismissing his suit with prejudice.
Finally, we review the judgment denying Mr. Rondeno’s motion to amend and supplement his petition under an abuse-of-discretion standard and conclude that the trial judge did not abuse his discretion in refusing to permit amendment of the petition so as to assert the matters which Mr. Rondeno sought to assert. Thus, we affirm that judgment.
We explain our reasoning in greater detail below.
Ji
We begin our explanation with a review of the operative facts, including important dates.
Mr. Rondeno was a longshore worker. He claimed to have been injured on May 29, 2005, while working aboard the MW ISLAND OASIS which at the time was physically situated at the Nashville Street wharf in Orleans Parish, which is, of course, in the territory of the United States District Court for the Eastern District of Louisiana. On May 28, 2008, the Vincent lawyers filed suit on Mr. Ronde-no’s behalf in the Eastern District of Louisiana, claiming monetary damages under maritime law including a longshore worker’s claim under 33 U.S.C. § 905(b). The vessel itself was identified, but no seizure was effected. In the federal complaint prepared by the Vincent lawyers, NYK Global Bulk Corporation was alleged to be the vessel’s owner.
NYK Global answered the complaint, affirmatively identifying itself as the charterer but denying ownership of the vessel. NYK Global’s attorney apparently communicated with the Vincent lawyers the correct identity of the owner, but during the period of their representation they took no step to amend or supplement the complaint so as to join the vessel owner.
*519 When the replacement attorneys were about to enter the litigation, they had access on March 24, 2009 to the federal court pleadings, including NYK Global’s answer. (Notably, it is from this date that the Vincent lawyers argue a one-year |speremptive period commenced which resulted in the untimeliness of the legal malpractice claim, which was filed on March 31, 2010.)
Sometime in April 2009, the replacement attorneys conferred with NYK Global’s trial counsel who repeated to them what he had told the Vincent lawyers about not correctly naming the vessel owner. There is no direct evidence in the record which shows that any of the communications among either the Vincent lawyers or the replacement attorneys and NYK Global’s counsel involved legal opinions or views that the nonjoinder of the correct vessel owner had resulted in the claim against it having prescribed. But, on June 2, 2009, the replacement attorneys joined Toshin Kishin Co. Ltd.,[4] the vessel owner, as a party defendant. Apparently, Toshin Kishin in its answer pleaded laches, that is the prescriptive period, as a complete bar to Mr. Rondeno’s suit. But, as we have noted, there was no judicial determination of its contention in the first-filed lawsuit. And the Vincent lawyers had intervened in that lawsuit to argue that Toshin Kishin was timely sued.
The replacement attorneys’ representation of Mr. Rondeno discontinued on May 26, 2011, and he began to handle his federal lawsuit without the assistance of a lawyer. Apparently believing that the Eastern District of Louisiana could not exercise its diversity jurisdiction over the case and that there was no other basis for its jurisdiction, Mr. Rondeno moved for a voluntary dismissal of that case so that he could file anew in the federal court in Texas. U.S. District Judge Jay Zainey | (¡expressed grave misgivings about the prudence of Mr. Rondeno’s dismissal motion, but decided that in the end it was Mr. Rondeno’s decision alone and thus he granted the dismissal without prejudice on October 14, • 2011.
Mr. Rondeno, again acting without the assistance of a lawyer, filed a complaint in the United States District Court for the Southern District of Texas; in this complaint, he invoked the Texas savings statute [Tex. Civ. Prac. & Rem.Code Ann. § 16.064 (West 2011) ] to explain why a lawsuit filed in November 2011, for injuries sustained in 2005 was not prescribed. On his own initiative and without awaiting responsive pleadings from any named defendant, U.S. District Judge Lynn Hughes ruled in effect that Mr. Rondeno’s voluntary dismissal of the Louisiana action resulted in his claim against the vessel owner being prescribed. This district court judgment [5] was rendered on January 20, 2012, but Mr. Rondeno filed an appeal to the Fifth Circuit Court of Appeals, which had not decided the matter at the time of the hearing on the motion for summary judgment in this case. As we noted earlier, we are now informed (although it is not part of the record from the court below) that the Fifth Circuit has affirmed the judgment, and its judgment is final and definitive.[6]
*520 _L¡n
From the preceding discussion it is apparent that neither Mr. Rondeno nor the Vincent lawyers were convinced that Mr. Rondeno’s claim against the vessel owner was actually prescribed.
Section 905(b)(3) provides an exception to the exclusivity of benefits under the Longshore and Harbor Workers’ Compensation Act. See 33 U.S.C. § 901 et seq. A longshore worker whose injury is “caused by the negligence of a vessel” may bring an action against such vessel as a third party. § 905(b)(3). See, e.g., Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994). The equitable doctrine of lach-es is applicable to a longshore worker’s negligence action against the owner of the vessel, and the federal courts consider the applicability of laches to be “well settled.” See, e.g., Tolbert v. M/V Stanislavsky, 513 F.Supp. 279, 280 (MJD.La.1981). “[Tjhe principle of laches is judge-created and partakes of equity both negatively and affirmatively.” Barrois v. Nelda Faye, Inc., 597 F.2d 881, 884 (C.A.5 1979). In applying laches, courts resort to an analogous statute of limitations, and in maritime personal injuries the limitations or prescriptive period which is best suited for analogically applying is the three-year prescriptive period provided by the Jones Act. Id.; see also 46 U.S.C. § 30106.
The purpose of the analogous application of the prescriptive period is not to definitively determine a prescriptive date, but to allocate the burden of showing excusable delay by the plaintiff or lack of prejudice to the defendant. Barrois, supra. “Laches requires proof of (1) lack of diligence by the party against whom lathe defense is asserted, and (2) prejudice to the party asserting the defense.” Costello v. United States, 365 U.S. 265, 282, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) (emphasis added). “[B]oth of the elements [are] necessary to the recognition of the defense.” Id. But laches, once proved, is a “complete defense to an action” irrespective of whether the analogous statute of limitations has run. Mecom v. Livingston Shipbuilding Co., 622 F.2d 1209, 1215 (C.A.5 1980). The determination whether laches applies is one ordinarily entrusted to the discretion of the trial judge whose decision will not be overturned absent an abuse of discretion. See DeSilvio v. Prudential Lines, Inc., 701 F.2d 13, 15’ (C.A.2 1983).
All we know in this record about the proceedings before Judge Zainey is that he made no decision respecting the defense of laches. While it appears that the correct vessel owner was not joined as a party defendant within the three-year analogous prescriptive period, that failure is not in itself dispositive of the timeliness of his lawsuit. Without a definitive ruling on laches, we can only conclude that Mr. Ron-deno would have borne the burden of showing to Judge Zainey that he had not lacked diligence in correctly naming the vessel owner and that the vessel owner was not prejudiced by the delay. And there is no evidence before us on which we could postulate how Judge Zainey might have exercised his discretion.[7]
In their exception of peremption the Vincent lawyers contend that Mr. Ronde-no’s replacement lawyers learned on March 24, 2009 that suit had not been | j|filed against the vessel owner within a three-year prescriptive period, or by May 29, 2008. And the knowledge of Mr. Ron-deno’s replacement lawyers, they further *521 argue, is imputed to him. See Gibson v. Herman, Herman, Katz and Cottar, LLP, 04-2204, p. 10 (La.App. 4 Cir. 2/15/06), 927 So.2d 1178, 1184.
In order for the Vincent lawyers to prevail on their exception of peremption, it would first be necessary for us to find that Mr. Rondeno’s replacement attorneys, by accessing the initial answer of the vessel charterer, discovered or should have discovered the omission. See La. R.S. 9:5605 A.[8] Notice to the client’s attorney |inis imputed to the client for purposes of determining when prescription begins to run. See Regional Transit Auth. v. Levey, 91-0529 (La.App. 4th Cir. 1992), 595 So.2d 1255, 1258. And, of course, if that access was sufficient to commence the running of the one-year peremptive period, Mr. Ron-deno’s legal malpractice suit, which was not filed until March 31, 2010, was filed too late.
But without a date certain for prescription, either by statute or court ruling in the underlying case, and in the absence of any factual basis for us to consider the defense of laches on the merits, we cannot conclude as a matter of law that the replacement lawyers’ first access to pleadings would have constituted sufficient discovery of the prescription of Mr. Ronde-no’s claim so as to commence the running of the peremptive period.
Moreover, it does not seem that the replacement lawyers who filed the amended complaint to add the vessel owner would have done so unless they had at least a good faith belief that the matter was arguable. See Fed. Rule Civ. Pro. 11(b). And, while motivated for obvious *522 reasons, the Vincent lawyers intervened in the federal action to argue that prescription had not run against the vessel owner.
Even Mr. Rondeno, who would ultimately bear the burden of proof at trial that the claim was prescribed, refiled his lawsuit in Texas, naming the vessel owner — as if the prescriptive period had not run. Because of our concern on this point, we requested the parties to specifically brief this issue. Without oversimplifying Inthe matter, we understand Mr. Rondeno to now be arguing that the Vincent lawyers’ negligence occurred on May 29, 2008, the three-year anniversary of Mr. Rondeno’s injury, because they filed suit in a court that had no jurisdiction, not because they failed to name the correct owner.[9] (But see our discussion in Part IV, post.) We, however, understand that the Vincent lawyers argue that May 29, 2008, has not been established as the date of malpractice such that the peremptive periods established by La. R.S. 9:5605 A began to run from that date because no court has determined that the vessel owner could not be made a defendant in the suit after that point.[10] And if we are uncertain at this late date whether there was, in fact, malpractice on May 29, 2008, surely the argument that the replacement lawyers “discovered” the malpractice on March 24, 2009, is not supportable. Because we cannot conclude that as a matter of law Mr. Rondeno was on notice that he should have filed a malpractice suit against his attorneys on March 24, 2009, the judgment sustaining the exception of peremption must be reversed.
HI
We now turn to the aspect of the judgment based upon the motion for summary judgment. The Vincent lawyers alternatively argued that the only certainty we have is that Mr. Rondeno’s claim against the vessel owner was prescribed because subsequent to their representation he voluntarily dismissed the lawsuit they had filed on his behalf thereby causing it to be prescribed.
112^
Again, as we have noted, there was never a determination in the federal action pending in the Eastern District of Louisiana that Mr. Rondeno’s claim against the vessel owner was prescribed. So long as that suit was pending, there was at least a possibility that Judge Zainey would determine that the amended complaint against the vessel owner was not untimely. See Fed. Rule Civ. Pro. 15(c)(1)(C). Once Mr. Rondeno voluntarily dismissed that case, however, he virtually assured that his claim would thereby prescribe. See Basco v. American General Ins. Co., 43 F.3d 964, 965-966 (C.A.5 1994) (“A federal statute of limitations is not tolled when the plaintiff files a claim that later is voluntarily dismissed.”).
It appears that Mr. Rondeno came to believe that the Eastern District of Louisiana could not exercise jurisdiction over his case and that the Texas savings statute, supra, would permit him to re-file his case in federal court in Texas, which he believed to be a court of proper jurisdiction. As we noted earlier, Judge Zainey expressed grave misgivings about Mr. Rondeno’s intended course of action, but nonetheless granted the relief of voluntary *523 dismissal, which is the relief Mr. Rondeno sought.
When Mr. Rondeno re-filed in federal court in Texas, it was immediately determined by the district judge that all of his claims had prescribed. The Texas savings statute, which apparently operates very much like our La. Civil Code art. 3463 (“Interruption [of prescription] is considered never to have occurred if the | isplaintiff abandons, voluntarily dismisses the action at any time ... or fails to prosecute at the trial”), did not save him. And for the first time a court determined that Mr. Rondeno’s claim against the vessel owner was untimely.
While not questioning the sincerity of Mr. Rondeno’s belief that the Eastern District of Louisiana was not a court of competent jurisdiction or of proper venue, we entertain no doubt about the matter. “The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States; ... to all cases of admiralty and maritime Jurisdiction; ... between Citizens of different States; ... and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.” U.S. Constitution, Article III § 2, cl. 1.
“The [federal] district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.” 28 U.S.C. § 1331. Mr. Rondeno brings his complaint under federal law, 33 U.S.C. § 901 et seq. Additionally, federal district courts “have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.” 28 U.S.C. § 1333. Also, the federal court in Louisiana has diversity jurisdiction over his maritime action because the matter in controversy exceeds $75,000 and is between Mr. Rondeno, a citizen of Texas, and Toshin Kishin, the citizen or subject of Japan, a foreign state.[11] See 28 U.S.C. § 1332(a)(2). Thus any federal court was a court of competent jurisdiction for his lawsuit.
|14And the Eastern District of Louisiana in particular was a proper venue. Because the injuries occurred at the Nashville Street wharf in New Orleans, the action in the Eastern District of Louisiana was filed in a judicial district of proper venue. See 28 U.S.C. § 1391(b)(2) (“A civil action may be brought in ... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.”).
Mr. Rondeno’s voluntary dismissal of his suit from a court of competent jurisdiction and proper venue, however, precludes us from finding that the Vincent defendants committed malpractice either in their delayed filing of the suit or in their failure to properly name the vessel owner upon initial filing of the suit. So long as the lawsuit was pending the federal district judge could have exercised his discretion to find that the “late” naming of the vessel owner was excusable on the part of Mr. Rondeno and not prejudicial to the vessel owner. Additionally, to the extent that Mr. Rondeno claims that he suffered additional compensable damages beyond those itemized in the original complaint, the federal district judge is authorized by Fed. Rules Civ. Pro. 15(c) to permit an amendment to the pleadings; the new allegations of the amendment would relate back to the date of filing of the initial complaint. But by his own act of voluntarily dismissing his pending complaint (as amended) Mr. Ron-deno prevented the federal district judge *524 from granting him any relief for his injuries aboard the M/V ISLAND OASIS.
_bB
Now, as we turn to this legal malpractice claim, we emphasize that in order to establish a valid legal malpractice claim against the Vincent lawyers, Mr. Rondeno “must show evidence sufficient to convince a reasonable trier of fact of (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence.” MB Industries, LLC. v. CNA Ins. Co., 11-0303, p. 15 (La.10/25/11), 74 So.3d 1173, 1184. Most importantly, in this case, Mr. Rondeno has the burden to prove “some causal connection between the alleged negligence and the eventual unfavorable outcome of the litigation.” Id., p. 20, 74 So.3d at 1187 (emphasis added). This he cannot do; the unfavorable outcome of his maritime litigation was as far as can be determined caused by his own act of voluntary dismissal.
Mr. Rondeno’s voluntary dismissal of his action constitutes a failure to mitigate his damages. “An obligee must make reasonable efforts to mitigate the damage caused by the obligor’s failure to perform.” La. Civil Code art.2002. “When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.” Id.
“The scope of a party’s duty to mitigate depends on the particular facts of the individual case, and a party is not required to take actions which would likely prove unduly costly or futile.” MB Industries, 11-0303, pp. 10-11, 74 So.3d at 1181. Mr. Rondeno’s duty to mitigate his damages “encompassed only what a ‘reasonably prudent man’ would have done to lessen his damages, given the facts 11fiknown to him at the time and avoiding the temptation to view the case through hindsight.” Id. p. 11, 74 So.3d at 1181, quoting Unverzagt v. Young Builders, Inc., 252 La. 1091, 1100, 215 So.2d 823, 826 (1968).
We find that a reasonably prudent man would not have voluntarily dismissed his suit from a court with proper jurisdiction and venue when the timeliness of the adding of a defendant was still at issue. This is especially so in light of his replacement lawyers’ good faith joinder of the vessel owner by amended complaint. Mr. Ronde-no points to no one, law-trained or otherwise, who described his pending maritime lawsuit as futile. He alone came to that unsupportable conclusion. Also, the notion that the pending litigation would be “unduly costly” is likewise unsupportable in light of Mr. Rondeno’s efforts to file another one against the vessel owner. In sum, the dismissal of his maritime lawsuit, that is the “unfavorable outcome of the litigation,” cannot be shown by him to have been caused by the Vincent lawyers. This is an essential element of his burden of proof that he did not carry at the motion for summary judgment. See La. C.C.P. art. 966 C(2) (movant need only “point out to court that there is an absence of factual support for one or more elements essential to the adverse party’s claim”). Mr. Ron-deno did not, and cannot, satisfy his evi-dentiary burden at trial that the Vincent lawyers and not he were the cause of the unfavorable outcome. Accordingly, there being no genuine issue of material fact, summary judgment was properly granted, dismissing Mr. Rondeno’s lawsuit with prejudice.
JijIV
In this final Part we address Mr. Rondeno’s contention that the trial judge erred in refusing to grant him leave to amend and/or supplement his petition. We review the trial court’s ruling under an abuse-of-discretion standard. See Roberts v. Murphy Oil Corp., 90-0399 (La.App. 4th *525 Cir.1991), 577 So.2d 308, 313. And we, like the trial judge, find that the amendment or supplement that Mr. Rondeno sought would be of no avail to him in this action.
As we understand Mr. Rondeno’s wishes as expressed in his motion to amend and supplement, he wanted to amend his lawsuit to allege that the Vincent lawyers had committed malpractice by negligently failing to file timely the maritime lawsuit in a court of competent jurisdiction and proper venue. We have already considered the error of that contention in the Part III-A, ante. In order to find that Mr. Rondeno failed to mitigate his damages when he voluntarily dismissed his federal lawsuit, it was necessary for us to assure ourselves that the lawsuit was at least filed in a court of competent jurisdiction and proper venue. Thus, the trial judge, who had concluded the same, recognized that this new allegation was unfounded in law and fact.
We next turn to his desire that he be allowed to amend his pleadings to argue a breach of contract[12] by the Vincent lawyers for failure to fully itemize his damages, especially those required to compensate him for the subrogation rights of | ^reimbursement by the Medicare program. This amendment also is of no avail and cannot change the outcome of this matter because he voluntarily dismissed the existing lawsuit in which this very claim could have been brought by amendment.
We note that Mr. Rondeno raised in the trial court that the Vincent lawyers had perpetrated some kind of fraud upon him. Mr. Rondeno generally alleges that the fraud exception to the peremption statute is applicable. See La. R.S. 9:5605 E (“The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined by Civil Code Article 1953.”). “Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.” La. Civil Code art. 1953. “Fraud may also result from silence or inaction.” Id.
These allegations[13] were set forth in his contested facts, but they were not included to any extent in his motion to amend. Importantly, “[i]n pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity.” La. C.C.P. art. 856. “Malice, intent, knowledge, and other condition of mind of a person [however] may be alleged generally.” Id.
But Mr. Rondeno did not seek in the trial court to amend or supplement his petition with any allegations of fraud. “As a general rule, appellate courts will not |19consider issues raised for the first time in this court, which are not pleaded in the court below and which the district has not addressed.” Geiger v. State ex rel. Dept. *526 of Health and Hosp., 01-2206, p. 11 (La.4/12/02), 815 So.2d 80, 86. Because the allegations of fraud were not contained in Mr. Rondeno’s motion, they were not considered by the trial court, and the trial court did not rule on them, we will not entertain or consider those or other allegations first raised in Mr. Rondeno’s brief.[14]
Thus, we conclude by finding that the trial judge did not abuse his discretion in denying any requested amendment to the petition. And we do not consider any other requests which were first made to us.
DECREE
We affirm the granting of summary judgment in favor of the defendants and against Richard Rondeno, dismissing his suit with prejudice. We also affirm the trial court’s judgment denying Mr. Ronde-no’s motion to amend and supplement his petition. Each party is to bear its own costs of the appeal. See La. C.C.P. art. 2164.
AFFIRMED
LANDRIEU, J., concurs in the result.

. These other lawyers, who are sued along with Mr. Vincent, are William Jared Vincent and Vatroslav Jacob Garbin. The Law Office of William S. Vincent, Jr. was also made a defendant in the suit.

. We place this remark in parenthesis to highlight that it is dehors our record.

. He has sought to raise still more claims in his appellate briefs. See Part IV, post.

. Other entities, in addition to the vessel and NYK Global, named at the same time are Keishen Kaiun Co., Ltd., Ever Bright Shipping SA, and P & O Ports Louisiana, Inc.

. This was the judgment denying reconsideration.

.The trial court judgments under review by us were rendered on April 3, 2012; we are informed that the Fifth Circuit’s decision was rendered August 22, 2012.

. Our record is even void of any indication whether the vessel owner sought a pretrial ruling on its defense of laches.

. La. R.S. 9:5605 provides:
A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged act, omission, or neglect occurred. However, with respect to any alleged act, omission, or neglect occurring prior to September 7, 1990, actions must, in all events, be filed in a court of competent jurisdiction and proper venue on or before September 7, 1993, without regard to the date of discovery of the alleged act, omission, or neglect. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional law corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, the prescriptive and peremptive period shall be governed exclusively by this Section.
D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

. Mr. Rondeno also alleges that the failures to name the vessel owner and to seize the vessel were acts of malpractice.

. For this point, the defendants argue that laches may still allow the defendant to be named and cite Fed. Rule Civ. Pro. 15(c), which allows amended pleadings to relate back to the date of the filing of the initial petition when certain criteria are met.

. Mr. Rondeno notes that the vessel flies the flag of the nation of Panama.

. Although we have not decided this case on the basis of peremption, we note that merely recasting his claim from one of malpractice or negligence to one of breach of contract is of no avail. See La. R.S. 9:5605 A: the per-emption statute applies to all claims against lawyers “whether based upon tort, or breach of contract, or otherwise.”

. Mr. Rondeno has alleged two different acts of fraud. The first allegation of fraud is the Vincent lawyers allegedly intentional failure to name the vessel owner in the suit. The second allegation of fraud is a fraud upon the court, that allegedly occurred when the Vincent attorneys engaged in an ex parte meeting with the district judge on March 26, 2012 to amend the judgment that had been rendered on March 16, 2012. Connected to the alleged fraud upon the court is Mr. Rondeno’s asserted Racketeer Influenced and Corrupt Organizations violation, see 18 U.S.C. § 1961 et. seq., stemming from an alleged conspiracy between the Vincent lawyers and the district judge.

. These allegations included violations of his due process rights, of his right to individual dignity, and of the Human Rights Act of 1998; they revolve around the point that Mr. Ronde-no felt that he was not given a fair trial because he did not have an attorney.