STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 CA 0065

GUILBEAU MARINE, INC., FORMOSA PLANTATION, LLC,
ANTHONY GUILBEAU, JR., AND LORRAINE G. GUILBEAU

VERSUS

GEORGE J. LEDET, JR. AND XYZ INSURANCE COMPANY

JUDGMENT RENDERED: **SEP 15 2023**

* * * * * * *

Appealed from The Seventeenth Judicial District Court
Parish of Lafourche • State of Louisiana
Docket Number C-131,186 • Division B

The Honorable Steven Miller, Presiding Judge[1]

* * * * * * *

| | |
|---|---|
| Bobby J. Triche | COUNSEL FOR APPELLANTS |
| Damon J. Baldone | PLAINTIFFS—Guilbeau Marine, Inc.; |
| Thomas E. Dunn | Formosa Plantation, LLC; Anthony |
| Houma, Louisiana | Guilbeau, Jr.; and Lorraine G. |
| | Guilbeau |
| | |
| Elliot M. Lonker | COUNSEL FOR APPELLEE |
| David S. Daly | DEFENDANT—George J. Ledet, Jr. |
| New Orleans, Louisiana | |

* * * * * * *

**BEFORE: WELCH, HOLDRIDGE, AND WOLFE, JJ.**

---

[1] The Honorable John E. Leblanc was appointed as Judge *pro tempore* of the Seventeenth Judicial District Court to fill the vacancy created by the election of Judge Steven Miller to the First Circuit Court of Appeal following the November 8, 2022 election.

**WELCH, J.**

In this legal malpractice action, plaintiffs—Guilbeau Marine, Inc., Formosa Plantation, LLC, Anthony Guilbeau, Jr., and Lorraine G. Guilbeau—appeal the trial court's judgment granting summary judgment in favor of defendant—George J. Ledet, Jr.—and dismissing all of plaintiffs' claims against defendant with prejudice. For the following reasons, we affirm.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed suit against Mr. Ledet on October 25, 2016, alleging claims of legal malpractice and breach of fiduciary duty. Approximately thirty-seven years prior in 1978, Anthony and Lorraine Guilbeau (collectively, "the Guilbeaus") incorporated Guilbeau Marine, Inc. ("Guilbeau Marine"). Guilbeau Marine owns and operates vessels in the Gulf of Mexico relating to the oil and gas industry, and the Guilbeaus serve as its principal management.

Plaintiffs alleged in their petition that beginning with the incorporation of Guilbeau Marine, Mr. Ledet served as their attorney in all business matters and represented the Guilbeaus as they acquired and disposed of various assets, created companies, prepared and notarized documents for their businesses, advised them regarding mineral rights on their property, and advised them on all financial matters. For example, in 2006, the Guilbeaus formed Formosa Plantation, LLC, which holds and operates certain immovable property in Tensas Parish in North Louisiana, including a farm (the "Formosa Plantation property"). The Guilbeaus serve as principal members and managers of Formosa. Plaintiffs alleged that Mr. Ledet issued invoices for his legal work and was paid by plaintiffs for those invoices.

Additionally, plaintiffs alleged in their petition that South Lafourche Bank (the "Bank") has extended credit to Guilbeau Marine at various times throughout the years and, pertinent to this matter, at times when Guilbeau Marine experienced financial hardship due to downturns in the economy and the global oil and gas

2

market. Plaintiffs' loans from the Bank were secured by preferred ship mortgages against certain vessels owned by Guilbeau Marine.

In late 2014 and early 2015, Guilbeau Marine became delinquent on loan payments. In October 2015, plaintiffs discussed a possible refinancing of the loans with the Bank. Plaintiffs alleged that the Bank allowed plaintiffs to refinance their loans, and that if the Guilbeaus personally put up the Formosa Plantation property as collateral—as allegedly suggested and advised by Mr. Ledet—the Bank would forgive any delinquent payments and charge plaintiffs one year of "interest only" payments on the loans.[2] Accordingly, on October 30, 2015, the Guilbeaus, individually and on behalf of Formosa Plantation, executed a loan agreement and two promissory notes in favor of the Bank. The promissory notes were secured by certain Guilbeau Marine vessels and a second mortgage encumbering the Formosa Plantation property.

Six months later, the Bank initiated foreclosure proceedings on the Formosa plantation property, even though plaintiffs had not been delinquent in making any payments.[3] Plaintiffs alleged that unbeknownst to them during the 2015 loan negotiations, Mr. Ledet had simultaneously represented plaintiffs *and* the Bank— another of Mr. Ledet's clients. Plaintiffs claimed that Mr. Ledet had "an irreconcilable conflict of interest in his legal representation" of plaintiffs and used information he garnered through his representation of plaintiffs to benefit his other client, the Bank, during the loan negotiations. Plaintiffs claimed they did not discover Mr. Ledet had also legally represented the Bank until December 2015.

---

[2] According to plaintiffs' petition, included in these representations from the Bank to the Guilbeaus is a written memorandum and term sheet dated October 13, 2015, which stated "Re-structure Guilbeau Marine Inc. Loan" and specifically provided the restructuring would provide "1 Year" "Interest Only" payments. The memorandum and term sheet provided that such restructuring would be "secured by vessels and [second] mortgage on property (farm) in [North Louisiana]."

[3] See **South Lafourche Bank & Trust Co. v. M/V Lorraine G, in rem, et al.**, No. CV 2:17-08502-NJB-MBN (E.D. La. 2016).

Plaintiffs filed suit against the Bank and Mr. Ledet for prematurely foreclosing on the Formosa Plantation property (the "Bank lawsuit").[4] Plaintiffs also initiated bankruptcy proceedings in an attempt to retain the Formosa Plantation property.[5]

The bankruptcy proceedings ultimately settled. As part of that settlement, plaintiffs agreed to dismiss the Bank lawsuit; however, plaintiffs expressly reserved their legal malpractice claim against Mr. Ledet. Plaintiffs signed a "Forbearance Agreement," wherein plaintiffs: waived all defenses to the loan documents and security agreements; acknowledged the validity of the security agreements; and, acknowledged that they did not pay their obligations, were in default, and that the Bank had the right to demand and seek full payment of the indebtedness.

Pursuant to their express reservation, plaintiffs filed suit against Mr. Ledet on October 25, 2016, as noted *supra*, alleging claims of legal malpractice and breach of fiduciary duty. Mr. Ledet answered plaintiffs' petition and raised several affirmative defenses. Specifically, Mr. Ledet argued that plaintiffs were estopped from pursing a legal malpractice claim against him. Mr. Ledet also argued that plaintiffs' own negligence, or the negligence of third parties, was a substantial cause-in-fact of plaintiffs' damages—if damages could be proven—and should operate to bar plaintiffs' recovery.

Subsequently, on May 2, 2022, Mr. Ledet filed a motion for summary judgment, arguing that plaintiffs: (1) are judicially estopped from asserting their claims by virtue of their judicial admissions in the forbearance agreement; and (2)

---

[4] See **Guilbeau Marine, Inc., et al. v. South Lafourche Bank and Trust Co. and George J. Ledet, Jr.**, Docket No. 131187, Division E, Seventeenth Judicial District Court for the Parish of Lafourche, State of Louisiana.

[5] On September 11, 2018, Guilbeau Marine filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana. See **In re Guilbeau Marine, Inc.**, No. CV 20-4, 2020 WL 806672, *1 (Bankr. E.D. La. 2020).

cannot establish the causation element of their legal malpractice claim against him. Plaintiffs opposed Mr. Ledet's motion for summary judgment.[6]

After a hearing on Mr. Ledet's motion for summary judgment, the trial court granted summary judgment in favor of Mr. Ledet and gave oral reasons for ruling. The trial court signed a judgment on November 5, 2022 in accordance with its oral ruling, granting Mr. Ledet's motion for summary judgment and dismissing all of plaintiffs' claims against Mr. Ledet with prejudice.[7] Plaintiffs now appeal.[8]

## SUMMARY JUDGMENT[9]

Appellate courts review the grant or denial of a motion for summary judgment *de novo* using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. **Georgia-Pacific Consumer Operations, LLC v. City of Baton Rouge**, 2017-1553, 2017-1554 (La. App. 1st Cir. 7/18/18), 255 So.3d 16, 22, writ denied, 2018-1397 (La. 12/3/18), 257 So.3d 194. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); **Campbell v. Dolgencorp, LLC**, 2019-0036 (La. App. 1st Cir. 1/9/20), 294 So.3d 522, 526. A summary judgment may be rendered only as to those issues set forth in the motion under consideration by the court at that time. La.

---

[6] Mr. Ledet filed a reply memorandum in further support of his motion for summary judgment.

[7] Although the trial court designated its November 5, 2022 judgment as "final" in accordance with La. C.C.P. art. 1915, that designation is unnecessary. The November 5, 2022 judgment is final without need of designation because it dismissed plaintiffs' claims against Mr. Ledet "in their entirety," *i.e.*, the judgment dismissed plaintiffs' legal malpractice lawsuit against Mr. Ledet. See La. C.C.P. art. 1915(A)(1).

[8] Plaintiffs timely filed a motion for a devolutive appeal on November 14, 2022. The trial court signed an order of appeal on November 18, 2022, notice of which was transmitted by the Clerk of Court to the parties on November 21, 2022.

[9] Although the Legislature recently amended La. C.C.P. art. 966, those amendments are not applicable to the instant appeal. See 2023 La. Acts No. 317, § 1 (eff. Aug. 1, 2023), and 2023 La. Acts No. 368, § 1 (eff. Aug. 1, 2023).

C.C.P. art. 966(F); **Anderson v. Laborde Constr. Indus., L.L.C.**, 2018-1583, 2019-0356 (La. App. 1st Cir. 3/12/20), 311 So.3d 1072, 1080, writ denied, 2020-00924 (La. 10/20/20), 303 So.3d 307.

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, after meeting his initial burden, the mover must only point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden then is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

Claims of judicial estoppel and legal malpractice may be raised by a party in a motion for summary judgment. See, e.g., **Hill v. TMR Exploration, Inc.**, 2022-0037 (La. App. 1st Cir. 10/4/22), 353 So.3d 823, 826, writ denied, 2022-01628 (La. 1/11/23), 352 So.3d 989; **Frisard v. State Farm Fire & Cas. Co.**, 2006-2353 (La. App. 1st Cir. 11/2/07), 979 So.2d 494, 496.

## LAW AND DISCUSSION

In their first assignment of error, plaintiffs argue the trial court erred in rendering summary judgment on an issue not set forth in Mr. Ledet's motion, namely, negligent representation. Second, plaintiffs argue the trial court erred in finding that plaintiffs could not prove loss caused by Mr. Ledet's alleged negligence. Third, plaintiffs argue the trial court erred in granting Mr. Ledet's motion for summary judgment and dismissing their claims because plaintiffs contend that Mr. Ledet failed to meet his burden of proof on the motion.

## La. C.C.P. art. 966(F): Issues Set Forth in the Motion

In his memorandum in support of his motion for summary judgment, Mr. Ledet raised two grounds for the trial court to grant summary judgment—that plaintiffs: 1) are judicially estopped from asserting their claims by virtue of their judicial admissions in the forbearance agreement; and 2) cannot establish the required causation element of their legal malpractice claim against him.

The trial court did not issue written reasons for judgment; however, the trial court did give oral reasons for its ruling. Specifically, the trial court (1) denied summary judgment on the issue of judicial estoppel, finding that a genuine issue of material fact existed as to whether plaintiffs had asserted a legal position that was inconsistent with their prior position in the bankruptcy proceedings. The trial court (2) found that a genuine issue of material fact existed as to whether an attorney-client relationship and resulting attorney-client privilege existed between plaintiffs and Mr. Ledet. The trial court (3) granted summary judgment on the issue of negligent representation, finding that Mr. Ledet had pointed out the absence of factual support for an element of plaintiffs' negligent representation claim, namely damages, finding no factual support that plaintiffs would be able to prove they lost money because of Mr. Ledet's alleged negligent representation.

Although appellate courts review judgments, not reasons for judgment, and afford no deference to the trial court's underlying reasoning for its judgment when conducting *de novo* review of a summary judgment, those reasons *may* be relevant when determining whether a trial court exceeded its authority by rendering summary judgment as to issues not set forth in the motion under consideration by the court. See La. C.C.P. art. 966(F); **Libertas Tax Fund I, LLC v. Laiche**, 2021-0330 (La. App. 1st Cir. 12/22/21), 340 So.3d 236, 242-43 n.6, writ denied, 2022-00160 (La. 4/12/22), 336 So.3d 82.

7

As noted above, a summary judgment may only be rendered or affirmed as to those issues set forth in the motion under consideration by the court at that time. La. C.C.P. art. 966(F); **Anderson**, 311 So.3d at 1080. A summary judgment decided on issues other than those raised by the parties is legally erroneous and must be reversed. **Troncoso v. Point Carr Homeowners Ass'n**, 2022-0530 (La. App. 1st Cir. 1/10/23), 360 So.3d 901, 916. The purpose of the restriction codified in La. C.C.P. art. 966(F) is to inform the opponent of the summary judgment motion of the elements on which there allegedly is no genuine issue of material fact and to avoid surprise. **Troncoso**, 360 So.3d at 916; see also La. Dist. Court Rules, Rule 9.10 (outlining the requirement for a memorandum in support of a motion for summary judgment). Failure to enforce La. C.C.P. art. 966(F) results in a non-mover on a motion for summary judgment being required to respond to the motion by submitting evidence that it will be able to carry its burden of proof as to all essential elements of his claim, regardless of whether a particular element of his claim was placed at issue by the motion or not. **Troncoso**, 360 So.3d at 916. Requiring a non-mover to essentially try their entire case to the court in response to a motion for summary judgment is contrary to the stated purpose of the summary judgment procedure, *i.e.*, to secure the just, speedy, and inexpensive determination of every action. See La. C.C.P. art. 966(A)(2); **Troncoso**, 360 So.3d at 916.

We find, however, that the issue of "negligent representation" was raised in Mr. Ledet's motion for summary judgment. As will be discussed more fully *infra*, "negligent representation by an attorney" is the second element of a legal malpractice claim. Our *de novo* review of the evidence shows that Mr. Ledet raised the issue of plaintiffs' legal malpractice claim in his motion for summary judgment, wherein he argued that plaintiffs would be unable to prove the causation element of legal malpractice. Therefore, because the trial court granted summary judgment in favor of Mr. Ledet on the issue of negligent representation—the second element of

a legal malpractice claim—and because the issue of legal malpractice was set forth by Mr. Ledet in his motion, we find that plaintiffs' argument to the contrary is erroneous. The assignment of error is without merit.

## Judicial Estoppel

Judicial estoppel prohibits parties from deliberately changing positions according to the exigencies of the moment. The doctrine is intended to prevent the perversion of the judicial process and prevents playing fast and loose with the courts. To apply, courts look to whether: (1) the party against whom judicial estoppel is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. **Webb v. Webb**, 2018-0320 (La. 12/5/18), 263 So.3d 321, 328; **Hawkins v. Meridian Resource and Exploration, LLC**, 2016-1545 (La. App. 1st Cir. 12/6/17), 236 So.3d 610, 618, writ denied, 2018-0027 (La. 4/16/18), 240 So.3d 920.

In support of his motion for summary judgment, Mr. Ledet submitted: (1) plaintiffs' petition; (2) portions of the deposition transcript of Mr. Guilbeau; (3) portions of the deposition transcript of Mrs. Guilbeau; and (4) the Forbearance Agreement. Mr. Ledet argued that plaintiffs' stipulations in the Forbearance Agreement constitute "judicial confessions"—namely, plaintiffs' admissions that the loan documents are valid, that they failed to make the required payments, were in default, and that the Bank had the right to enforce the loan documents and demand payment. Mr. Ledet claimed that in their petition, plaintiffs' only asserted damages are those for "the default on their obligations to the Bank, the Bank's foreclosure of their assets, and the resulting legal fees incurred to correct the errors and failures by [Mr.] Ledet as their counsel." Mr. Ledet argued that plaintiffs cannot take positions contrary to the facts they have judicially confessed.

In opposition, plaintiffs submitted: (1) portions of the deposition transcript of Mr. Guilbeau; and (2) portions of the deposition transcript of Mrs. Guilbeau

Plaintiffs stated that they agree with all positions admitted by them in the Forbearance Agreement; however, plaintiffs contended that nowhere in the Forbearance Agreement did plaintiffs "judicially confess" that Mr. Ledet did not commit malpractice during their representation of them, which led to the bankruptcy settlement, the foreclosure on the Formosa Plantation property, and the resulting attorney's fees. Plaintiffs argued that they specifically retained their malpractice claim against Mr. Ledet for this purpose—to file a legal malpractice lawsuit.

Our *de novo* of the evidence shows that in the Forbearance Agreement, plaintiffs expressly retained their right to bring a legal malpractice claim against Mr. Ledet. The Forbearance Agreement, signed in July 2019, states: "[Plaintiffs] shall retain malpractice claims against George Ledet as set forth in the Malpractice Lawsuit," *i.e.*, the 2016 legal malpractice lawsuit currently before this court. Accordingly, we find that under the first prong of the judicial estoppel test, plaintiffs have not asserted a legal position that is plainly inconsistent with a prior position taken by them in the bankruptcy proceedings. For these reasons, we find that judicial estoppel does not prevent plaintiffs from raising their legal malpractice claim against Mr. Ledet.

## Legal Malpractice

A legal malpractice claim in Louisiana is a negligence claim,[10] albeit a professional negligence claim, and thus derives from La. C.C. arts. 2315 and 2316. See Frank L. Maraist, 21 LA. CIV. L. TREATISE, *Louisiana Lawyering* § 18.1 (2020).

---

[10] Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under general negligence principles. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care (or the defendant owed a duty of care to the plaintiff) (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (or breached the requisite duty) (the breach element); (3) the defendant's substandard conduct was a cause-in-fact of the harm or the plaintiff's injuries (the cause-in-fact element); (4) the risk of harm was within the scope of protection afforded by the duty breached (the scope of the duty, scope of protection, or legal cause element); and (5) actual damages (damages element). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. **Aucoin v. Larpenter**, 2021-0064 (La. App. 1st Cir. 9/20/21), 329 So.3d 363, 368-69, writ denied, 2021-01505 (La. 12/7/21), 328 So.3d 420.

10

In order to establish a valid legal malpractice claim, a plaintiff must show evidence sufficient to convince a reasonable trier of fact of: (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. **MB Industries, LLC v. CNA Ins. Co.**, 2011-0303, 2011-0304 (La. 10/25/11), 74 So.3d 1173, 1184. An attorney is not required to exercise perfect judgment in every instance. **Belanger v. Spencer H. Calahan, L.L.C.**, 2020-0763, 2020-0764 (La. App. 1st Cir. 4/16/21), 324 So.3d 152, 159, writ denied, 2021-00828 (La. 10/5/21), 325 So.3d 377. The plaintiff must prove the defendant failed to "exercise at least that degree of care, skill, and diligence which is exercised by prudent practicing attorneys in his locality." **MB Industries**, 74 So.3d at 1184 (quoting **Ramp v. St. Paul Fire & Marine Ins. Co.**, 269 So.2d 239, 244 (La. 1972)). Our Supreme Court has held that expert testimony must be introduced in legal malpractice cases to establish the applicable standard of care, except in those rare cases where the malpractice is so egregious that a lay jury could infer the defendant's actions fell below any reasonable standard of care.[11] **MB Industries**, 74 So.3d at 1185; **Belanger**, 324 So.3d at 159.

Mr. Ledet pointed out that plaintiffs lacked factual support for their contention that any alleged negligence on his part, or conflict of interest, caused plaintiffs to default on their loan, lose their property in foreclosure, and incur attorney's fees to fight the Bank's actions. In opposition to Mr. Ledet's motion, the plaintiffs argued that had they known Mr. Ledet was also representing the Bank in the negotiations, they would have sought outside counsel and would never have executed the loan documents. While plaintiffs had other assets available to secure the loan, Mr. Ledet—who knew the high value of the Formosa Plantation property and that the

---

[11] For example, the failure to appear and defend a client, when that client faces substantial ramifications, is an obvious act of professional negligence for which no expert testimony is needed. **Frisard v. State Farm Fire & Cas. Co.**, 2006-2353 (La. App. 1st Cir. 11/2/07), 979 So.2d 494, 498.

11

Guilbeaus planned on retiring on that property—allegedly convinced plaintiffs to use that property as collateral. Plaintiffs contended that they executed the documents upon the fraudulent advice of Mr. Ledet, who represented the terms of the loan agreement to the Guilbeaus differently than the terms contained in the loan agreement actually signed by them. Because of Mr. Ledet's alleged negligent acts and omissions, plaintiffs argued they lost the Formosa Plantation property and had to secure the services of other attorneys to represent them in the foreclosure proceedings, file for bankruptcy, and to sue Mr. Ledet.

On our *de novo* review of the evidence, we find that plaintiffs did not produce factual support sufficient to establish the existence of a genuine issue of material fact as to whether any alleged negligence by Mr. Ledet caused plaintiffs to suffer damages. The evidence shows that plaintiffs agreed to put up the Formosa Plantation property as collateral for their refinanced loan, agreed to all loan terms, defaulted on their loan, lost the property in foreclosure, and incurred attorney's fees to fight the Bank in litigation. Based on the evidence presented, the plaintiffs' damages were caused by their own actions—not any malpractice by Mr. Ledet. Therefore, we find that plaintiffs failed to meet their burden on summary judgment to produce factual support sufficient to establish the existence of a genuine issue of material fact or that Mr. Ledet is not entitled to judgment as a matter of law.

## DECREE

We affirm the trial court's November 5, 2022 judgment granting George J. Ledet, Jr.'s motion for summary judgment and dismissing plaintiffs' legal malpractice claim against Mr. Ledet, with prejudice. All costs of this appeal are assessed to plaintiffs, Guilbeau Marine, Inc., Formosa Plantation, LLC, Anthony Guilbeau, Jr., and Lorraine G. Guilbeau.

**AFFIRMED.**